EDWARD M. LOISEAU ET AL. *v.* BOARD OF TAX
REVIEW OF THE TOWN OF SUFFIELD
(AC 16627)

Dupont, C. J., and Spear and Daly, Js.

Argued June 3—officially released August 19, 1997

*Deborah W. A. Eliason*, with whom, on the brief, was *John D. Adams*, for the appellants (plaintiffs).

*Justin J. Donnelly*, with whom, on the brief, were *Edward G. McAnaney* and *Regina C. Graziani*, for the appellee (defendant).

*Opinion*

DUPONT, C. J. The plaintiffs, Edward M. Loiseau and Lucille G. Loiseau, appeal from the trial court's denial of their motion to open the judgment after the trial

court granted a judgment of dismissal for failure to make out a prima facie case in favor of the defendant board of tax review. We reverse the judgment of the trial court.

On April 15, 1994, the plaintiffs appealed to the trial court from the February 25, 1994 decision of the board of tax review of the town of Suffield (board), claiming that the board's valuation of their property as of October 1, 1993,[1] was grossly excessive, disproportionate, unlawful and not in accordance with the uniform percentage of true and actual valuation as required by statute.[2] The plaintiffs asked that the valuation be

[1] The board had determined that the property had a fair market value of $601,500, which was a decrease from the assessors' fair market value of $709,000. The assessors determined that all property would be liable for taxation at 70 percent of its true and actual value. Thus, after the appeal to the board, the property at issue was to be taxed on a value of $421,050.

[2] General Statutes § 12-117a provides in relevant part: "Any person . . . claiming to be aggrieved by the action of the board of tax review or the board of assessment appeals, as the case may be, in any town or city may, within two months from the date of the mailing of notice of such action, make application, in the nature of an appeal therefrom, with respect to the assessment list for the assessment year commencing October 1, 1989, October 1, 1990, October 1, 1991, October 1, 1992, October 1, 1993, October 1, 1994, or October 1, 1995, and with respect to the assessment list for assessment years thereafter, to the superior court for the judicial district in which such town or city is situated, which shall be accompanied by a citation to such town or city to appear before said court. . . . If, during the pendency of such appeal, a new assessment year begins, the applicant may amend his application as to any matter therein, including an appeal for such new year, which is affected by the inception of such new year and such applicant need not appear before the board of tax review or board of assessment appeals, as the case may be, to make such amendment effective. The court shall have power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appear equitable, and, if the application appears to have been made without probable cause, may tax double or triple costs, as the case appears to demand; and, upon all such applications, costs may be taxed at the discretion of the court. If the assessment made by the board of tax review or board of assessment appeals, as the case may be, is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes, together with interest and any costs awarded by the court, or, at the applicant's option, shall be granted a tax credit for such overpayment, interest and any

reduced equitably and proportionately in accordance with the uniform percentage of true and actual valuation as required by statute to be used by the assessor and the board. The application was later amended to include the tax years of 1994 and 1995.

A trial to the court was held on December 12, 1995, and February 29, 1996. At trial, the plaintiffs called David Collins, a real estate appraiser, as their expert witness. In the fall of 1993, Collins had taken over the appraisal of the subject property from Edward Lynch, whom the plaintiffs had originally hired to appraise their property. Lynch died prior to trial. The appraisal reports that Collins presented at trial were in Lynch's name and bore Lynch's signature, although Collins testified that he had created them based on Lynch's preliminary work.

Three reports produced by Lynch and Collins were introduced into evidence. The plaintiffs introduced the first, which had a date of value of October 1, 1989, the date of the last town-wide revaluation of the town of Suffield. The defendant introduced two other versions of the same document, with dates of value of October 1, 1992, and October 1, 1993. The appraisal dated 1993 had been part of an exchange of evidence between the two parties at a pretrial conference and was apparently a draft version. The appraisal dated 1992 had been given by the plaintiffs to the defendant a few weeks before trial in exchange for the defendant's final appraisal. Subsequent to the exchange, the plaintiffs discovered several typographical errors in the document, including

costs awarded by the court. Upon motion, said court shall, in event of such overpayment, enter judgment in favor of such applicant and against such city or town for the whole amount of such overpayment, together with interest and any costs awarded by the court. The amount to which the assessment is so reduced shall be the assessed value of such property on the grand lists for succeeding years until the tax assessor finds that the value of the applicant's property has increased or decreased."

the date of value, and gave the corrected version, with the 1989 date, to the defendant shortly before trial. The three versions each contain different conclusions regarding the value of the property, ranging from $190,500 to $200,000.

A review of the transcripts demonstrates that Collins' testimony was often unclear and sometimes contradictory regarding his method of appraisal of the property. He testified that, in his expert opinion, the property had a fair market value of $200,000 in 1989. He used the income approach in appraising the property, which is a valuation method that determines property value by derivation of the rental value of the property and may include anticipated future income that has been discounted to a present value. His testimony as to fair market value and his method of appraisal, however, was not unequivocal.

Following Collins' testimony, the plaintiffs called as a witness Paul Champagne, the appraiser and expert witness for the defendant. The defendant objected on the grounds that Champagne was not the plaintiffs' witness and was not disclosed by the plaintiffs as an expert to be called by them, and that Champagne's report was the work product of the defendant. The defendant argued that the plaintiffs could examine its expert on cross-examination but could not examine him on direct during the course of the plaintiffs' case. Champagne was allowed to take the stand, but was not allowed to reveal the figure at which he had valued the property. The court also did not allow the plaintiffs to introduce Champagne's report into evidence, reasoning that the report, which contained the figure at which he valued the plaintiffs' real estate, would be the same as allowing Champagne to testify as to value.

After the plaintiffs rested, the defendant, without having conducted a direct examination of Champagne,

moved for a judgment of dismissal, claiming that the plaintiffs had not made out a prima facie case.[3] The trial court granted the motion for judgment of dismissal. The plaintiffs' subsequent motion to open the judgment was denied. This appeal followed.

When a plaintiff has failed to prove its prima facie case, it is proper for a court to grant the defendant's motion for judgment of dismissal pursuant to Practice Book § 302. See *Rosenfield* v. *Cymbala*, 43 Conn. App. 83, 91, 681 A.2d 999 (1996). A court may find that a plaintiff has failed to make out a prima facie case "when the evidence produced by the plaintiff, if fully believed, would not permit the trier in reason to find the essential issues on the complaint in favor of the plaintiff." *Minicozzi* v. *Atlantic Refining Co.*, 143 Conn. 226, 230, 120 A.2d 924 (1956); see also *Hinchliffe* v. *American Motors Corp.*, 184 Conn. 607, 609, 440 A.2d 810 (1981), on appeal after remand, 192 Conn. 252, 470 A.2d 1216 (1984). "In considering a motion under Practice Book § 302, a trial court must consider all of the plaintiff's evidence to be true. . . . Further, a trial court must draw all inferences in the plaintiff's favor." (Citations omitted; internal quotation marks omitted.) *Walshon* v. *Walshon*, 42 Conn. App. 651, 654, 681 A.2d 376 (1996).

"On appeal of a dismissal pursuant to Practice Book § 302, we take the plaintiff's evidence as true; *Higgins* v. *Ambrogio*, 19 Conn. App. 581, 584, 562 A.2d 1154 (1989); and consider the trial court's conclusions in light of the evidence in the record. *Bershtein, Bershtein &*

---

[3] Practice Book § 302 provides: "Dismissal in Court Cases for Failure to Make Out a Prima Facie Case

"If, on the trial of any issue of fact in a civil action tried to the court, the plaintiff has produced his evidence and rested his cause, the defendant may move for judgment of dismissal, and the court may grant such motion, if in its opinion the plaintiff has failed to make out a prima facie case. The defendant may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made."

*Bershtein* v. *Nemeth,* 221 Conn. 236, 239, 603 A.2d 389 (1992). 'Whether the plaintiffs established a prima facie case is a question of law.' *Wordie* v. *Staggers,* 27 Conn. App. 463, 465, 606 A.2d 734 (1992); *Angelo Tomasso, Inc.* v. *Armor Construction & Paving, Inc.,* 187 Conn. 544, 561, 447 A.2d 406 (1982). 'We must determine whether the trial court properly determined that the plaintiff failed to provide sufficient evidence to support his prima facie case.' *Ivimey* v. *Watertown,* 30 Conn. App. 742, 751, 622 A.2d 603, cert. denied, 226 Conn. 902, 625 A.2d 1375 (1993), citing *Logan* v. *O'Neill,* 187 Conn. 721, 728, 448 A.2d 1306 (1982)." *Discover Leasing, Inc.* v. *Murphy,* 33 Conn. App. 303, 308–309, 635 A.2d 843 (1993).

Under General Statutes § 12-117a, the plaintiffs had to meet two burdens to prove their prima facie case: first, they had to establish that they owned the property at the time of the valuation; second, they had to prove that they had been aggrieved by the action of the town of Suffield. See General Statutes § 12-117a; *Gorin's, Inc.* v. *Board of Tax Review,* 178 Conn. 606, 608, 424 A.2d 282 (1979). There is no dispute that the plaintiffs owned the property at the relevant time. The defendant argues that the plaintiffs failed to establish that they were aggrieved by the town of Suffield's determination of the fair market value of their property at $601,500.

The defendant claims that the plaintiffs failed to demonstrate a fair market value of the property. The plaintiffs respond that the trial court weighed the credibility of Collins in determining that the plaintiffs had not proven their prima facie case. They claim that because Collins stated at trial that in his expert opinion the property was worth $200,000 in 1989, they have established a prima facie case. They claim further that, if they had been allowed to examine the defendant's expert witness, he would have supported their claim that the town's assessment of $601,500 was erroneous because

that expert placed a value on the property that was significantly lower than the town's appraised value, as evidenced in his appraisal, which the town had given to the plaintiffs.

We need not determine whether the plaintiffs established a prima facie case on the basis of Collins' testimony alone because we hold that the trial court improperly refused to allow the defendant's expert witness to testify about the value of the plaintiffs' property during the plaintiffs' case. We, therefore, remand for a new trial.

We recently held that "where one party has disclosed an expert witness pursuant to Practice Book § 220 (D),[4] and that expert witness has either been subsequently deposed by the opposing party, or the expert's report has been disclosed pursuant to discovery, then either

[4] Practice Book § 220 (D) provides in relevant part: "In addition to and notwithstanding the provisions of subsections (A), (B) and (C) of this rule, any plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within a reasonable time prior to trial. Each defendant shall disclose the names of his or her experts in like manner within a reasonable time from the date the plaintiff discloses experts, or, if the plaintiff fails to disclose experts, within a reasonable time prior to trial. . . . Once the substance of any opinion or opinions of an expert witness who is expected to testify at trial becomes available to the party expecting to call that expert witness, disclosure of expert witness information shall be made in a timely fashion in response to interrogatory requests pursuant to subsection (A) (1) of this rule, and shall be supplemented as required pursuant to Sec. 232. . . ."

The defendant had filed a motion in limine at the start of trial in an attempt to preclude the plaintiffs' expert from testifying. The defendant argued, in its motion, that it was unclear who the plaintiffs' expert at trial would be because they never filed a separate document stating who their expert was, and the appraisal report had the names of two appraisers on it. The plaintiffs responded that they had told the defendant who their expert was, and, because one of the two appraisers listed on the report had died, it was clear who would be testifying. The trial court denied the motion in limine. The plaintiffs thus complied with § 220 (D).

party may call that expert witness to testify at trial. This holding follows the rule adopted in other jurisdictions. See, e.g., *Kaufman* v. *Edelstein*, [539 F.2d 811 (2d Cir. 1976)]; *Granger* v. *Wisner*, 134 Ariz. 377, 656 P.2d 1238 (1982); *Fenlon* v. *Thayer*, 127 N.H. 702, 506 A.2d 319 (1986)." *Lane* v. *Stewart*, 46 Conn. App. 172, 177, 698 A.2d 929 (1997); see also *Thomaston* v. *Ives*, 156 Conn. 166, 174, 239 A.2d 515 (1968); *Barksdale* v. *Harris*, 30 Conn. App. 754, 761, 622 A.2d 597, cert. denied, 225 Conn. 927, 625 A.2d 825 (1993).

The reasoning in *Lane* is applicable in the present case. Here, as in *Lane*, "[b]y disclosing the witness, the defendant made it possible for the plaintiffs to discover evidence that the plaintiffs decided was beneficial to their case and should be brought before the trier of fact. To allow the defendant to prevent [the] witness from testifying may [deprive] the trier of fact of material and relevant information that would have assisted it in reaching a decision in the case." *Lane* v. *Stewart*, supra, 46 Conn. App. 177.

That the plaintiffs might have the opportunity to cross-examine a defense expert does not provide fair access if the defendant chooses not to call the expert as a witness. If a judgment of dismissal is rendered at the close of a plaintiff's case, as in this case, there would not be an opportunity for such cross-examination. In a case such as this one, where the testimony of the defendant's expert, Champagne, may not be as favorable to the defendant as the defendant would like, the defendant could keep out unfavorable evidence by not calling Champagne to the stand. Here, where the defendant in control of the appraiser is a governmental entity, charged with the duty to assess the property of its citizens at fair market value, it is even more compelling to hold that the plaintiffs should have been allowed to call the defendant's expert witness to testify in their case-in-chief.

346

In *Thomaston* v. *Ives*, supra, 156 Conn. 173–74, an eminent domain case, our Supreme Court noted that "justice is best served in a case such as the one before us by requiring the appraiser [for the state] to testify to his expert opinion when called upon to do so [by the owner of the property]." The attempt by the defendant to deprive the trier of the benefit of its expert witness' opinion should not be allowed. We hold that the plaintiffs, the owners of the property, should have been able to introduce the testimony of the defendant's expert during the plaintiffs' case.

The judgment of dismissal is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.