# REGINA CAVALLARO, ADMINISTRATRIX (ESTATE OF PETER CAVALLARO) *v.* HOSPITAL OF SAINT RAPHAEL ET AL.
## (AC 25495)

Schaller, Gruendel and Harper, Js.

Argued June 3—officially released October 18, 2005

*William F. Gallagher*, with whom, on the brief, were *Hugh D. Hughes, Erica W. Todd* and *Joseph W. Trotta*, for the appellant (substitute plaintiff).

*Michael D. Neubert*, with whom, on the brief, was *Maureen Sullivan Dinnan*, for the appellees (defendants).

*Opinion*

SCHALLER, J. In this medical malpractice action, the substitute plaintiff, Carol Monday,[1] appeals from the judgment of the trial court rendered in favor of the defendants[2] after it granted their motion for summary judgment. On appeal, the plaintiff claims that the court improperly (1) precluded the decedent's treating physician from testifying as an expert witness on the issue of causation and (2) concluded that certain notations found in the decedent's hospital records could not be

---

[1] The decedent's wife, Regina Cavallaro, initiated this lawsuit in her capacity as administratrix of the estate of the decedent, Peter Cavallaro. In early 2001, however, Regina Cavallaro died, and Monday was substituted as the plaintiff. In this opinion we refer to the substitute plaintiff as the plaintiff and to the original plaintiff as Regina Cavallaro.

[2] The defendants are the Hospital of Saint Raphael in New Haven and Lynn Plourde, a registered nurse employed by the hospital.

introduced in lieu of expert testimony that generally is required to establish causation in a claim for medical malpractice. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the plaintiff's appeal. On May 7, 1997, the plaintiff's decedent, Peter Cavallaro, entered the defendant hospital to undergo bilateral knee replacement. In preparation for the procedure, the decedent had blood drawn for use in the event that a blood transfusion was necessary. After the surgery, a transfusion was necessary. A unit of blood that did not belong to the decedent was administered to him. The plaintiff, in the complaint, alleged that following the blood transfusion, the decedent exhibited "tendencies of a reaction to the transfusion, specifically feeling extreme cold; chills; severe subjective complaints of feeling unwell; anxiety; disorientation; wheezing; headache; and shortness of breath . . . ." The plaintiff further alleged that the hospital and the defendant Lynn Plourde, a nurse on the hospital staff, failed to monitor or treat that initial reaction.

During the next eleven months, the decedent allegedly suffered from "severe, permanent and disabling injuries . . . ."[3] Throughout that time period, the decedent's treating physician was Brett J. Gerstenhaber, a pulmonologist. On April 22, 1998, the decedent returned to the hospital and was admitted by Gerstenhaber with a diagnosis of acute community acquired pneumonia. Two days later, the decedent died.[4]

---

[3] The decedent's numerous ailments included "insulin dependent diabetes mellitus," "left lower lobe pneumonia" and "acute congestive heart failure." He also was "confined to a wheel chair," required a "prolonged hospital stay" and needed "to use oxygen for the remaining part of his life . . . ."

[4] The hospital's summary discharge indicated that the principal cause of death was "severe pulmonary fibrosis with severe underlying lung function and need for oxygen . . . ." Additional diagnoses included congestive heart failure, bronchiectasis and biventricular hypertrophy on dilation with fibrosis of the posterior left ventricle consistent with prior infarction.

On May 5, 1999, the decedent's wife, Regina Cavallaro, as administratrix of his estate, brought the present medical malpractice action[5] against the defendants. Specifically, she alleged that the blood transfusion administered to the decedent resulted in a reaction to the transfusion and that the defendants' negligence in failing to monitor or to treat that reaction resulted in injuries to the decedent that culminated in death.

More than four years passed from the initiation of the lawsuit until the commencement date of the trial, which was scheduled for the beginning of September, 2003. During that time period, the plaintiff disclosed only two expert witnesses. Specifically, the plaintiff disclosed two nurses for the purpose of testifying as to "the nursing standard of care and also as to the causal relation of the same to the incident alleged in the complaint." As of September, 2003, the plaintiff had not disclosed the decedent's treating physician, Gerstenhaber, as an expert witness. In addition, the plaintiff also had failed to respond to multiple discovery requests from the defendants' counsel as well as requests for medical authorizations.[6]

In an effort to protect his position and gain access to the medical records of Gerstenhaber, the defendants' counsel disclosed Gerstenhaber as the defendants'

---

[5] In a second revised complaint, Regina Cavallaro also claimed a loss of consortium. As a derivative cause of action, loss of consortium "is dependent on the legal existence of the predicate action. . . . That is to say, if an adverse judgment bars the injured spouse's cause of action, any claim for loss of consortium necessarily fails as well." (Citation omitted.) *United Services Automobile Assn.* v. *Kaschel,* 84 Conn. App. 139, 147 n.9, 851 A.2d 1257, cert. denied, 271 Conn. 917, 859 A.2d 575 (2004). Although the record in this case does not indicate whether the court ruled on the defendants' motion to dismiss the plaintiff's loss of consortium claim, as a derivative of the underlying medical malpractice claim, it effectively was dismissed when the court granted the defendants' motion for summary judgment.

[6] In their brief, the defendants claim to have requested medical authorizations from the plaintiff on at least two occasions, but the plaintiff never responded.

expert on August 25, 2003. The disclosure was worded broadly and included the possibility of causation testimony. Upon receipt of Gerstenhaber's records in September, 2003, the defendants' counsel obtained a note that indicated that Gerstenhaber had informed Regina Cavallaro in August, 1998, that the question of causation was ultimately "unanswerable."

Although the plaintiff's counsel had been informed of that information by Regina Cavallaro well before it was discovered by the defense, the plaintiff's counsel still did not contact Gerstenhaber until after the defendants had disclosed him as an expert witness. Upon speaking to Gerstenhaber in advance of trial, however, the plaintiff's counsel learned that Gerstenhaber had altered his opinion regarding causation, and now believed that there was a direct causal link between the improper transfusion and the resulting deterioration and death of the decedent.

On August 7, 2003, the defendants filed a motion for summary judgment, claiming that the two nurses disclosed by the plaintiff were not qualified to testify as to causation and that the plaintiff, therefore, had failed to disclose any experts to testify regarding causation. Subsequently, on September 10, 2003, the plaintiff disclosed Gerstenhaber and indicated that he would offer testimony as to the element of causation.[7] In response, on September 16, 2003, the defendants filed a motion to preclude Gerstenhaber from testifying for the plaintiff on the element of causation. The defendants argued that a disclosure made "approximately four years after the case [had] been filed, three years after [the] defendant[s] filed interrogatories and eight days after the case [had] been called in for jury selection" was a violation of the requirements of Practice Book § 13-4.

---

[7] The defendants' motion for summary judgment was changed to a motion to preclude following the plaintiff's disclosure of the treating physician.

After hearing argument, the court granted the defendants' motion to preclude Gerstenhaber from testifying. Nevertheless, recognizing the effect the ruling would have on the plaintiff's case, the court asked the defendants' counsel if it would be a fair resolution to allow a short delay to give them the opportunity to depose Gerstenhaber. The defendants' counsel responded that because Gerstenhaber, unlike the experts counsel already had retained, was a pulmonologist, counsel would require at least two months to retain his own expert in that specialty. The court then vacated its order on the motion to preclude and instructed counsel to request the necessary two month continuance from the presiding judge.[8] The presiding judge, however, was not willing to grant such a lengthy continuance and, consequently, the court precluded the testimony of the nurses as well as Gerstenhaber on the issue of causation. Subsequently, the defendants renewed their motion for summary judgment on the ground that the plaintiff had disclosed no medical expert who would be able to testify regarding causation.

The plaintiff's repeated attempts to have the court reconsider the preclusion of Gerstenhaber's expert testimony failed. The court, in a memorandum of decision filed March 9, 2004, determined that in light of the preclusion of the testimony of the two nurses and Gerstenhaber, the plaintiff could not prove the essential element of causation. The court, therefore, granted the defendants' motion for summary judgment. This appeal followed. Additional facts will be set forth as necessary.

I

We first consider the plaintiff's claim that the court improperly granted the defendants' motion to preclude the expert testimony of Gerstenhaber on the issue of

[8] The court was sitting for jury selection and concluded that a continuance of that length should properly be addressed by the presiding judge.

causation. The plaintiff argues that despite the late disclosure, she should have been permitted to call Gerstenhaber as an expert witness because he already had been disclosed as an expert by the defendants. We disagree.

As a preliminary matter, we set forth the legal principles that guide our resolution of the plaintiff's claim and identify the applicable standard of review. "[T]o prevail in a medical malpractice action, the plaintiff must prove (1) the requisite standard of care for treatment, (2) a deviation from that standard of care, and (3) a causal connection between the deviation and the claimed injury." (Internal quotation marks omitted.) *Boone* v. *William W. Backus Hospital*, 272 Conn. 551, 567, 864 A.2d 1 (2005). Generally, because the requirements for proper medical diagnosis and treatment are not within the common knowledge of laypersons, "the plaintiff must present expert testimony in support of a medical malpractice claim . . . ." Id.

Practice Book § 13-4 (4), which governs the disclosure of experts, "allows a court to preclude expert testimony if the proponent of the testimony has made a late disclosure of the expert and the late disclosure will cause undue prejudice to the moving party . . . . The moving party bears the burden of showing that it was prejudiced." *Menna* v. *Jaiman*, 80 Conn. App. 131, 138, 832 A.2d 1219 (2003). Practice Book § 13-4 (4) states in relevant part: "[A]ny plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties *within a reasonable time prior to trial. . . .* If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subdivision, or if an expert witness who is expected to testify is retained or specially employed after a reasonable

time prior to trial, such expert shall not testify if, upon motion to preclude such testimony, the judicial authority determines that the late disclosure (A) will cause undue prejudice to the moving party; or (B) will cause undue interference with the orderly progress of trial in the case; or (C) involved bad faith delay of disclosure by the disclosing party. . . ." (Emphasis added.)

"The court's decision on whether to impose the sanction of excluding the expert's testimony concerning causation rests within the sound discretion of the court. . . . The action of the trial court is not to be disturbed unless it abused its legal discretion, and [i]n determining this the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Citations omitted; internal quotation marks omitted.) *Sturdivant* v. *Yale-New Haven Hospital*, 2 Conn. App. 103, 107–108, 476 A.2d 1074 (1984); see also *Bartlett* v. *Heise*, 84 Conn. App. 424, 427, 853 A.2d 612 (2004) (applying abuse of discretion standard of review to decision of trial court to preclude expert testimony because party did not properly disclose expert witness pursuant to Practice Book § 13-4 [4]).

After a review of the record and transcripts in this case, we conclude that pursuant to Practice Book § 13-4 (4), the court reasonably determined that the late disclosure of Gerstenhaber would result in both undue prejudice to the defendants and undue interference with the orderly progress of trial. Undue prejudice to the defendants would result because they would be forced to locate, retain and disclose an expert in pulmonology and to conduct additional depositions. In light of the fact that the two month continuance was denied, the defendants would be prejudiced if the court allowed

the late disclosure because they would have had insufficient time to prepare to rebut Gerstenhaber's testimony. As the court noted, a substantial continuance would be necessary to avoid prejudice to the defendants. Such a continuance, however, would result in undue interference with the orderly progress of trial because it would further delay a case that at the time of the court's ruling was already more than four years old. As the court correctly noted: "To continue a case such as this, when it has been called in for trial, another two, four, six, eight months would not be just to the defendants."

The plaintiff argues that the court should not have precluded Gerstenhaber's testimony on the basis of late disclosure. The plaintiff contends that because the defendants already had disclosed Gerstenhaber as an expert, she should have been allowed to call him in her case-in-chief, notwithstanding her failure to follow the requirements of Practice Book § 13-4 (4). The plaintiff further contends that she "was not even required to disclose Gerstenhaber as an expert once the defendants had done so." In support of that argument, the plaintiff cites a line of cases for the proposition that once "one party discloses an expert, the opposing party is entitled to use that expert in its case-in-chief."

First, the plaintiff cites *Thomaston* v. *Ives*, 156 Conn. 166, 239 A.2d 515 (1968), in which our Supreme Court concluded that in "eminent domain proceedings initiated by the state highway commissioner in which the amount assessed by the commissioner as damages is the only issue in dispute, the owner of the condemned property may compel a real estate appraiser employed by, but not offered as a witness by, the commissioner to testify concerning his opinion as to the value of the condemned property." Id., 167. The court reviewed decisions from other jurisdictions and noted a split of authority on the issue of whether a landowner may, in eminent domain proceedings, require the state's

appraiser to testify concerning his valuation of the land. Id., 173. The court concluded that "justice is best served in a case such as the one before us by requiring the appraiser to testify to his expert opinion when called upon to do so. This is not to be taken to mean that every expert witness is to be held to the same requirement. The wide diversity of subjects on which expert opinion may be required and the varying circumstances under which the opinion may be sought militate against any such sweeping generalization. We decide only the case of the type at hand. . . . [The state's] failure to call [its own appraiser] should not, in a case of this kind, be allowed to deprive the trier of the benefit of that [appraiser's] opinion." Id., 173–74.

The *Thomaston* court was careful to limit its holding to the specific context and circumstances of the case. In so doing, the court did not bar, in other contexts and under other circumstances, application of the "position that the admissibility of such [expert] testimony rests in the sound discretion of the trier." Id., 173.

The plaintiff also cites *Barksdale* v. *Harris*, 30 Conn. App. 754, 622 A.2d 597, cert. denied, 225 Conn. 927, 625 A.2d 825 (1993), in which this court concluded that a plaintiff in an action for personal injuries resulting from an automobile accident "should be allowed to call as a witness a medical doctor hired by the defendant to examine the plaintiff." Id., 756. In *Barksdale*, "[t]he plaintiff's treating physician testified that the [vehicular] collision [at issue] caused the plaintiff's [injury], while the defendants' medical witness, a neurologist, who did not examine the plaintiff, testified that it did not." Id., 758. Another physician had been retained by the defendants, but had not been disclosed as an expert. Id. That second physician examined the plaintiff on the second day of trial, but the defendants did not call him to testify. Id. When the plaintiff indicated that she would call the physician, the defendants objected, "claiming

that [the physician's] testimony would be inadmissible because [he] was retained as an expert by the defendants." Id., 759. The court precluded the plaintiff from calling the physician as the plaintiff's witness. Id.

On appeal, this court concluded that once the plaintiff voluntarily submitted to an examination by the physician at the request of the defendants, the physician's written report should have been disclosed to the plaintiff pursuant to the rules of practice,[9] and the plaintiff should have been allowed to call the physician to testify regarding his "firsthand knowledge about the nature and extent of the plaintiff's injuries." Id., 762. The court found the following rationale persuasive: "If a defendant is allowed to use information learned from the examination of a plaintiff if it is favorable, but suppress the same information if it is unfavorable, then this would result in unfairness against the plaintiff without whose submission to a physical examination the evidence could not have obtained." (Internal quotation marks omitted.) Id., 761.

We conclude that the present case is readily distinguishable from *Barksdale*. Here, the defendants did not retain Gerstenhaber for the purpose of examining the decedent. The decedent also did not voluntarily submit to an examination by Gerstenhaber at the defendants' request. The defendants did not disclose Gerstenhaber in order to suppress unfavorable information. Rather, the defendants disclosed Gerstenhaber, the decedent's treating physician, only after they were unsuccessful in obtaining his records from the plaintiff. The favorable opinion regarding causation that the plaintiff sought from Gerstenhaber was not formed during any physical examination of the decedent and did not even appear in the records to which the defendants gained access

---

[9] Disclosure was made pursuant to former Practice Book § 220 (D), which was identical to Practice Book § 13-4 in all aspects relevant to this case.

as a result of their disclosure. In addition, unlike in *Barksdale*, the plaintiff in this case had superior access to Gerstenhaber and his records than did the defendants prior to their disclosure. Under those circumstances, barring the plaintiff from calling the defendants' expert as her own did not result in the "unfairness" that this court correctly perceived in *Barksdale*.

Finally, the plaintiff cites *Lane* v. *Stewart*, 46 Conn. App. 172, 698 A.2d 929, cert. denied, 243 Conn. 940, 702 A.2d 645 (1997), and *Loiseau* v. *Board of Tax Review*, 46 Conn. App. 338, 699 A.2d 265 (1997). In *Lane*, the plaintiffs, whose motorcycle had collided with the defendant's automobile, claimed that the trial court improperly quashed a subpoena duces tecum directed to an accident reconstruction expert hired by the defendant and disclosed by the defendant as an expert witness.[10] *Lane* v. *Stewart*, supra, 174–75. "The plaintiffs deposed [the expert] and as a result of his deposition testimony decided that they wanted to call him to testify in the event that the defendant did not." Id., 175. On appeal, this court noted that "the plaintiffs had already deposed the witness and wanted to compel his testimony at trial. By disclosing the witness, the defendant made it possible for the plaintiffs to discover evidence that the plaintiffs decided was beneficial to their case and should be brought before the trier of fact." Id., 177. This court held "that where one party has disclosed an expert witness pursuant to Practice Book § 220 (D) [now § 13-4], and that expert witness has either been subsequently deposed by the opposing party, or the expert's report has been disclosed pursuant to discovery, then either party may call that expert witness to testify at trial." *Lane* v. *Stewart*, supra, 177.

In *Loiseau*, this court, citing the holding in *Lane*, concluded that the trial court improperly granted the

---

[10] See footnote 9.

defendant's motion in limine to preclude the plaintiffs from calling the defendant's expert witness. *Loiseau* v. *Board of Tax Review,* supra, 46 Conn. App. 344–45. The plaintiffs had appealed to the trial court from the valuation of their property by the defendant, the board of tax review. Id., 339. At trial, the plaintiffs called an appraiser who had been disclosed as an expert witness by the defendant. Id., 341. The plaintiffs sought to examine the appraiser because he had "placed a value on the property that was significantly lower than the town's appraised value, as evidenced in his appraisal, which the town had given to the plaintiffs." Id., 344. The defendant objected, arguing that the appraiser had not been disclosed by the plaintiffs and, therefore, the plaintiffs could not examine the appraiser on direct examination. Id., 341. Although the court allowed the appraiser to take the witness stand, it did not allow him to reveal the amount at which he had valued the property, nor did it allow introduction of the appraiser's report. Id. After the plaintiffs rested, the defendant, without calling the appraiser, moved for a judgment of dismissal, claiming that the plaintiffs had failed to make out a prima facie case by showing that they had been aggrieved. Id., 341–42. This court concluded that "[t]he attempt by the defendant to deprive the trier of the benefit of its expert witness' opinion should not be allowed."[11] Id., 346.

In this case, unlike in *Lane* and *Loiseau,* the plaintiff *did not* obtain information as a result of deposing the defendants' expert witness or as a result of the defendants' disclosure of the report of its expert. Accordingly,

---

[11] *Loiseau* also cited *Thomaston* v. *Ives,* supra, 156 Conn. 166, in support of its conclusion, stating that "where the defendant in control of the appraiser is a governmental entity, charged with the duty to assess the property of its citizens at fair market value, it is even more compelling to hold that the plaintiffs should have been allowed to call the defendant's expert witness to testify in their case-in-chief." *Loiseau* v. *Board of Tax Review,* supra, 46 Conn. App. 345. That aspect of *Loiseau* is inapplicable to the present case.

the reasoning relied on in both *Lane* and *Loiseau* is inapplicable here. By disclosing the expert witness, the defendants in this case *did not* make it possible for the plaintiff to discover evidence that the plaintiff decided was beneficial to her case and should be brought before the trier of fact. But see *Lane* v. *Stewart*, supra, .46 Conn. App. 177; *Loiseau* v. *Board of Tax Review*, supra, 46 Conn. App. 345. Furthermore, unlike the experts in *Lane* and *Loiseau*, Gerstenhaber was not retained for the purpose of forming an opinion, nor was he under the control of the defendants. In contrast, he was the decedent's treating physician, who, unbeknownst to the defendants at the time they disclosed him as an expert, would subsequently alter his opinion regarding the cause of the decedent's death from "unknowable" to an opinion more favorable to the plaintiff.

We disagree that those cases cited by the plaintiff support her broad proposition that once "one party discloses an expert, the opposing party is entitled to use that expert in its case-in-chief." Instead, we conclude that the limited holdings of those cases are inapplicable to the facts of the present case and, therefore, do not excuse the plaintiff's failure to comply with the requirements of Practice Book § 13-4 or allow the plaintiff to escape the sanction imposed by the court. When the defendants filed a motion to preclude the plaintiff from calling Gerstenhaber, they were not attempting to deprive the trier of the benefit of their expert witness, but rather, they were seeking to avoid the prejudice caused by the plaintiff's late disclosure of Gerstenhaber.

In summary, the court reasonably determined that the late disclosure would result in both undue prejudice to the defendants and undue interference with the orderly progress of trial. Accordingly, we conclude that the court did not abuse its discretion in precluding Gerstenhaber from testifying on the issue of causation.

## II

Next, the plaintiff claims that the court improperly concluded that certain notations found in the decedent's hospital records could not be introduced in lieu of expert testimony that generally is required to establish causation in a claim for medical malpractice. We disagree.

The following additional facts are relevant to the plaintiff's claim. When opposing the defendants' motion for summary judgment, the plaintiff argued that certain notations contained within the decedent's medical records from his second admission to the hospital were an alternate and independent means of establishing causation. The plaintiff argued that the notations served to demonstrate the causal connection between the blood transfusion and the decedent's death.[12] The court, how-

---

[12] The first notation is an excerpt comprised of two consecutive entries from a "medical/surgical admission history" report. The relevant portion of the report provides:

"Reason for Adm   : [pneumonia] . . . .

"Medical Hx . . .

      Updated On Wed, 22 Apr 1998 1501 Problem:
       pulmonary fibrosis Since: Wed, 7 May
       1997 Updated By: Karen Rockey, RN
      Updated On Wed, 22 Apr 1998 1502 Problem:
       rxn to blood transfusion Since: Wed, 7
       May 1997 Updated By: Karen Rockey, RN
        * * *

"Respiratory/Cardiovascular

"Respiratory    : productive rusty cough with crackles left
       side home 02 3-5 liters
        * * *

"Comments    : ptwithpulmonary fibrosis"

A second notation, also dated April 22, 1998, was handwritten on a form titled "progress notes." In relevant part, that note states: "h/o pulmonary fibrosis on steroids since 5/97 . . . pt has Hx of immune-medicated pneumonitis (2 °) to transfusion reaction in 97. s/p bilat[eral] knee operation [with] implant in 5/97 which hospital course was complicated by tx reaction and went to pulmonary edema, recovered gradually. Echo in 5/97 . . . concentric lvh. Pt has been discharged on 3 [liters of Oxygen] since that time also

ever, found nothing in the records to indicate that the persons who had made the notations could be qualified as experts. The court determined that expert testimony was necessary to interpret the notations offered by the plaintiff because they were not self-explanatory. Accordingly, the court granted the defendants' motion for summary judgment because it concluded that the case presented a "complicated causation issue" and that the plaintiff had not disclosed an expert qualified to testify regarding causation.

As a preliminary matter, we identify the applicable standard of review and set forth the legal principles that guide our resolution of the plaintiff's claim. "Our standard of review of a court's ruling on a motion for summary judgment is well settled. Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Citations omitted; internal quotation marks omitted.) *Weldy* v. *Northbrook Condominium Assn., Inc.*, 89 Conn. App. 581, 584–85, 874 A.2d 296 (2005).

"[T]o prevail in a medical malpractice action, the plaintiff must prove (1) the requisite standard of care for treatment, (2) a deviation from that standard of care, and (3) a causal connection between the deviation and the claimed injury." (Internal quotation marks omitted.) *Boone* v. *William W. Backus Hospital*, supra, 272 Conn. 567. Because those elements are not within the common knowledge of laypersons, "the plaintiff must

has been using walker and wheel chair since knee operation. Pt is on 24 hr [Oxygen] now and has Hx of [increase] in [Oxygen] use . . . 6 [liters]." Additional notes indicate "interstitial pneumonitis (reaction to blood [transfusion] 2 years ago)."

present expert testimony in support of a medical malpractice claim . . . ." Id.

"An exception to the general rule with regard to expert medical opinion evidence is when the medical condition is obvious or common in everyday life. . . . Similarly, expert opinion may not be necessary as to causation of an injury or illness if the plaintiff's evidence creates a probability so strong that a lay jury can form a reasonable belief. . . . Expert opinion may also be excused in those cases where the professional negligence is so gross as to be clear even to a lay person." (Citations omitted; internal quotation marks omitted.) *Sherman* v. *Bristol Hospital, Inc.*, 79 Conn. App. 78, 89, 828 A.2d 1260 (2003).

Although the hospital records were business records,[13] neither the records, nor any other evidence, indicated that the persons who made the notations were qualified to give expert testimony regarding causation. Absent such evidence, any opinion regarding causation that was contained in the notations was not independently admissible. See *River Dock & Pile Inc.* v. *O & G Industries, Inc.*, 219 Conn. 787, 799, 595 A.2d 839 (1991) (opinion included within otherwise admissible business record admissible only if entrant would be qualified to give that opinion in testimony).

Accordingly, in order for the notations found in the decedent's hospital records to be introduced in lieu of expert testimony on causation, the case would have to fall into one of the narrow exceptions to the general rule that expert testimony is required to establish a case for medical malpractice. See *Sherman* v. *Bristol Hospital, Inc.*, supra, 79 Conn. App. 89. We conclude that none of the exceptions is applicable. First, the medical conditions—pulmonary fibrosis and pneumonitis—that were claimed to have harmed the decedent as

[13] See Conn. Code Evid. § 8-4.

a result of the blood transfusion were not "obvious or common in everyday life." (Internal quotation marks omitted.) Id. Second, the notations that the plaintiff contends were evidence on causation did not create "a probability so strong that a lay jury can form a reasonable belief." (Internal quotation marks omitted.) Id. Absent expert testimony to interpret the notations, a lay jury would be unable to comprehend the notations to form a reasonable belief regarding causation. Third, the professional negligence alleged by the plaintiff was not "so gross as to be clear even to a lay person." (Internal quotation marks omitted.) Id.

We conclude that the court properly determined that the notations found in the decedent's hospital records could not be introduced in lieu of expert testimony that is generally required to establish causation in a claim for medical malpractice. Accordingly, the court properly rendered summary judgment in favor of the defendants.

The judgment is affirmed.

In this opinion the other judges concurred.

