MICHAEL J. MCVERRY, ADMINISTRATOR (ESTATE
OF MARCOS MARTINEZ) *v.* DAVID CHARASH
(AC 26124)

Gruendel, Lavine and Peters, Js.

Argued April 24—officially released July 18, 2006

*William F. Gallagher*, with whom, on the brief, was *Hugh D. Hughes*, for the appellant (plaintiff).

*Kimberly A. Knox*, with whom were *Kenneth J. Bartschi*, and, on the brief, *Wesley W. Horton* and *Garie J. Mulcahey*, for the appellee (defendant).

*Opinion*

PETERS, J. Successful pursuit of a medical malpractice case generally requires a plaintiff to present expert testimony because the requirements for proper medical diagnosis and treatment are not within the common knowledge of laypersons. *Gold* v. *Greenwich Hospital Assn.*, 262 Conn. 248, 254–55, 811 A.2d 1266 (2002). A trial court may issue a scheduling order for the timely disclosure of the plaintiff's expert witnesses. Practice Book § 13-4 (4) authorizes a trial court to impose sanctions for failure to comply with such a scheduling order. In this case, relying on a protracted history of noncompliance, the trial court granted the defendant's motion for sanctions in the form of an order precluding the testimony of each of the plaintiff's expert witnesses. As a result of the court's decision, the plaintiff had no defense to the defendant's motion for summary judgment. The sole issue in this appeal is whether the trial court abused its discretion in granting the sanctions motion that precluded the plaintiff's expert witnesses

from testifying at trial. We affirm the judgment of the trial court.

The plaintiff, Michael J. McVerry, commenced this malpractice action on May 29, 2001, alleging that the defendant, David Charash, an emergency room physician at Danbury Hospital, had negligently caused the death of Marcos Martinez by failing to diagnose and treat an acute allergic drug reaction. The plaintiff alleged that the defendant's failure to connect Martinez' complaint of itching and fever with prior emergency room prescriptions for a sulfa drug and a drug containing penicillin caused the defendant to misdiagnose him as suffering from chicken pox. Martinez died of toxic epidermal necrolysis. The defendant denied his liability.

The history of the discovery motions in this case begins on July 23, 2001, when the defendant filed interrogatories requesting that the plaintiff disclose the names of his expert witnesses. On July 26, 2001, the plaintiff filed his first motion for an extension of time to September 20, 2001, to comply with the defendant's July discovery requests. That extension apparently was granted. On September 20, 2001, the plaintiff filed a second motion for an extension of time to October 19, 2001, which the trial court, *Pittman, J.*, granted.

Nearly a year later, on September 16, 2002, the defendant filed a motion for nonsuit for noncompliance with the July, 2001 discovery requests. The plaintiff filed an objection to the nonsuit and a third motion for an extension of time in which he represented that discovery compliance would be completed by September 27, 2002. The plaintiff apparently received that extension but, rather than complying, filed a fourth motion for an extension of time on September 23, 2002. On December 9, 2002, the trial court, *Dubay, J.*, sustained the defendant's objection to another extension on the ground

that "the plaintiff represents that compliance could be made by [September 27, 2002]."

On April 1, 2003, after a pretrial status conference, the trial court, *Holzberg, J.,* entered a scheduling order that was signed by both parties. The order required complete deposition of fact witnesses by May 15, 2003, disclosure of the plaintiff's experts by June 15, 2003, and complete deposition of the plaintiff's experts by December 15, 2003. The order stated that failure to comply "shall result in the entry of sanctions, including but not limited to nonsuit or default." The court ordered jury selection to commence on September 15, 2004. In effect, the court granted the plaintiff a fifth extension of time to disclose his expert witnesses.

On June 26, 2003, because of the plaintiff's noncompliance with the June 15 disclosure deadline, the defendant again moved for nonsuit for "failure to provide expert disclosure in compliance with the court's scheduling order." In response, the plaintiff moved for a sixth extension of time, until July 31, 2003, which was granted by the court, *Dubay, J.* The plaintiff failed to comply with that extension as well.

Ten months later, on May 24, 2004, the defendant filed a motion to preclude expert testimony pursuant to Practice Book § 13-4 (4).[1] In this motion, the defendant requested that the court preclude the plaintiff from producing "any expert testimony at the time of trial . . . ." He argued that the "[p]laintiff is now eleven

---

[1] Practice Book § 13-4 (4) provides in relevant part that "any plaintiff expecting to call an expert witness at trial shall disclose the name of that expert . . . within a reasonable time prior to trial. . . . If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subdivision . . . such expert shall not testify if, upon motion to preclude such testimony, the judicial authority determines that the late disclosure (A) will cause undue prejudice to the moving party; or (B) will cause undue interference with the orderly progress of trial in the case; or (C) involved bad faith delay of disclosure by the disclosing party. . . ."

months past the court's original deadline to disclose experts and ten months past the extended deadline which [the] plaintiff himself requested. Any attempt by [the] plaintiff to disclose his experts at this juncture would be untimely and prejudicial to the defendant as this case is only four months from the scheduled trial date."

In response, the plaintiff filed an objection to the defendant's motion to preclude and moved for amendment of the scheduling order to permit a seventh extension of time for disclosure of the plaintiff's experts. The plaintiff asked that the scheduling order be amended to permit disclosure by June 15, 2004, one year later than the date specified in Judge Holzberg's scheduling order. He argued that disclosure by June 15, 2004, would still give the defendant ample time to take depositions and to prepare for trial. On June 18, 2004, one week prior to the hearing date on the defendant's motion to preclude, the plaintiff disclosed four medical experts, located in Massachusetts, New Jersey and New York, and an economic expert located in Connecticut.

Following oral argument on the defendant's motion to preclude, the trial court, *Alvord, J.*, granted the defendant's motion and denied the plaintiff's motion to amend. In its memorandum of decision, the court found that "the late disclosure of the plaintiff's experts will cause undue prejudice to the defendant, and there are no reasons advanced by the plaintiff constituting good cause for either the delayed disclosure of experts or further delaying the trial of this matter." The court also denied the plaintiff's subsequent motion to vacate its order.

Because the plaintiff could not establish a case of medical malpractice without supporting expert testimony, the trial court, *Agati, J.*, subsequently rendered

summary judgment in favor of the defendant. This appeal followed.

On appeal, the plaintiff does not challenge the court's finding that his disclosure was untimely. He claims that the court nonetheless improperly granted the defendant's motion to preclude because (1) the belated disclosure did not prejudice the defendant, (2) the negative impact of the belated disclosure could have been mitigated by continuing the date of the trial to a later date and (3) the sanction of preclusion was disproportionate to the discovery violation. We are not persuaded.

As a preliminary matter, we set forth the legal principles that guide our resolution of the plaintiff's claim and the accompanying standard of review. Practice Book § 13-4 (4), which governs the disclosure of experts whom parties expect to call to testify at trial, provides in relevant part that "any plaintiff expecting to call an expert witness at trial shall disclose the name of that expert . . . within a reasonable time prior to trial. . . . If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subdivision . . . such expert shall not testify if, upon motion to preclude such testimony, the judicial authority determines that the late disclosure (A) will cause undue prejudice to the moving party; or (B) will cause undue interference with the orderly progress of trial in the case; or (C) involved bad faith delay of disclosure by the disclosing party. . . ."

"The court's decision on whether to impose the sanction of excluding the expert's testimony . . . rests within the sound discretion of the court. . . . The action of the trial court is not to be disturbed unless it abused its legal discretion, and [i]n determining this the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness. . . .

In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Tornaquindici* v. *Keggi*, 94 Conn. App. 828, 847, 894 A.2d 1019 (2006).

## I

We first address the plaintiff's claim that the court improperly found that the defendant was prejudiced by the delay in disclosure. He argues that even his late disclosure left the defendant sufficient time to depose the plaintiff's experts prior to trial.

We are not persuaded that the court's finding to the contrary was clearly erroneous. See *Ridgefield* v. *Eppoliti Realty Co.*, 71 Conn. App. 321, 337, 801 A.2d 902 (whether party claiming prejudice has met its burden of proof is issue of fact that we review under clearly erroneous standard), cert. denied, 261 Conn. 933, 806 A.2d 1070 (2002). Judge Holzberg's scheduling order contemplated that the defendant would have fifteen months between depositions and trial, not the thirteen weeks that would have remained after June 15 of the year of the scheduled date of trial. In other cases, we have upheld sanctions where expert disclosures were delayed until weeks before a trial was to begin. See, e.g., *Vitone* v. *Waterbury Hospital*, 88 Conn. App. 347, 356–58, 869 A.2d 672 (2005); *Beecher* v. *Greaves*, 73 Conn. App. 561, 563, 808 A.2d 1143 (2002).

## II

The plaintiff's second claim is that the trial court's preclusion order was an abuse of its discretion because any prejudice caused by the plaintiff's delay could have been avoided by a continuance deferring the date of the trial.[2] The trial court considered and rejected this

---

[2] The plaintiff also argues that, in addition to or in lieu of granting a continuance, the court could have limited the number of the plaintiff's experts or permitted the defendant to disclose his experts on the eve of trial. Our review of the record reveals that the plaintiff did not raise these

suggestion. The court aptly noted: "The factual record of this case . . . demonstrates that time and again the court has demonstrated leniency toward the plaintiff, repeatedly countenancing delays in [his] disclosure of experts and, in general, overlooking the plaintiff's failure to adhere to the court's orders for an orderly progression of this civil suit to trial on the merits. This consideration was afforded to the plaintiff despite repeated written objections of the defendant. That record of judicial leniency is most recently reflected in both the court's June, 2003 denial of the defendant's third motion for nonsuit, and the court's further extending the plaintiff an additional forty-five days for disclosure of experts. This case has been pending for over three years, it is scheduled for trial on September 15, 2004, and until late June, 2004, the plaintiff had disclosed no expert witnesses."

On this record, we conclude that it was reasonable for the court to find that further delay would have resulted in undue interference with the orderly progress of this 2001 case to trial. Two of our recent cases are directly on point. See *Cavallaro* v. *Hospital of Saint Raphael*, 92 Conn. App. 59, 67, 882 A.2d 1254 (substantial continuance would be necessary to avoid prejudice to defendants, such continuance would result in undue interference with orderly progress of trial as it would further delay case that was already more than four years

arguments before the trial court. "It is well settled that the trial court can be expected to rule only on those matters that are put before it. . . . With only a few exceptions . . . we will not decide an appeal on an issue that was not raised before the trial court. . . . To review claims articulated for the first time on appeal and not raised before the trial court would be nothing more than a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *McCann Real Equities XXII, LLC* v. *David McDermott Chevrolet, Inc.*, 93 Conn. App. 486, 526–27, 890 A.2d 140, cert. denied, 277 Conn. 928, 895 A.2d 798 (2006). The plaintiff has offered us no reason to deviate from this well established rule. Accordingly, we decline to review this argument.

old), cert. denied, 276 Conn. 926, 888 A.2d 93 (2005); *Advanced Financial Services, Inc.* v. *Associated Appraisal Services, Inc.*, 79 Conn. App. 22, 47, 830 A.2d 240 (2003) (continuation of trial to allow for deposition of experts, location of rebuttal experts and deposition of rebuttal experts would cause undue interference with action that had gone on for almost three years).

## III

Finally, we address the plaintiff's claim that the sanction of preclusion imposed by the trial court was disproportionate to the discovery violation. The plaintiff argues that precluding the testimony of all his expert witnesses was an inappropriate sanction for the violation of a single scheduling order. We disagree.

In *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, 257 Conn. 1, 17–18, 776 A.2d 1115 (2001), our Supreme Court articulated the standard for imposing and reviewing sanctions for violation of discovery orders, pursuant to Practice Book § 13-14[3] or to the court's inherent power to impose reasonable sanctions. The court held that "for a trial court's order of sanctions for violation of a discovery order to withstand scrutiny, three requirements must be met. First, the order to be complied with must be reasonably clear. . . . Second, the record must establish that the order was in fact violated. . . . Third, the sanction imposed must be proportional to the violation." Id. Whether a sanction is proportional to the violation "poses a question of the discretion of the trial court that we will review for abuse of discretion." Id., 18.

Preclusion in this case was based not only on the plaintiff's violation of Judge Holzberg's discovery

---

[3] Under Practice Book § 13-14 (b) (4), if a party fails to comply with a discovery order made pursuant to Practice Book §§ 13-6 through 13-11, the judicial authority may, on motion, enter an order "prohibiting the party who has failed to comply from introducing designated matters into evidence . . . ."

scheduling order but also on his failure to comply with Practice Book § 13-4 (4). Taking the *Millbrook Owners Assn., Inc.*, factors into account, the trial court recognized its obligation to assure that a preclusion order was a sanction that was proportional to the plaintiff's delayed disclosure of his expert witnesses. The court rejected the plaintiff's claims that the late disclosure was inadvertent and not wilful. We agree with the trial court.

The plaintiff first argues that preclusion was an inappropriate sanction because the violation of the scheduling order was inadvertent. Specifically, he maintains that the disclosure order was merely overlooked due to the untimely death of Thomas Airone, the attorney in the office of the plaintiff's counsel who originally handled the file. We are not persuaded.

Airone was assigned the file while working for the plaintiff's counsel. He subsequently left that practice, in September, 2003, taking the file with him. On October 23, 2003, Airone died unexpectedly. The file was then transferred back to the plaintiff's counsel.

No further action was taken on the file until April, 2004, when the plaintiff noticed the deposition of the defendant. As the plaintiff's counsel explained to Judge Alvord, the plaintiff wanted to postpone disclosure of his expert witnesses until the defendant had been deposed.

We agree with the trial court's conclusion that, while unfortunate, Airone's death, did not constitute good cause for the delay. As the court observed, "even assuming that . . . in light of the untimely October, 2003 death of the associate working on this file, some leeway should have been given, there is no persuasive explanation for waiting some twelve months after the disclosure deadline, and eight months after the death of the associate, to disclose any of the plaintiff's experts." In fact,

the plaintiff already was in violation of the discovery order at the time that Airone left the office of the plaintiff's counsel nearly two months prior to his death.

The plaintiff's alternate argument is premised on his counsel's representation that, as a matter of trial strategy, it is not uncommon to delay disclosure of the plaintiff's expert witnesses until the plaintiff has had the opportunity to take the defendant's deposition. According to the plaintiff, on a number of occasions, the defendant had been recalcitrant in responding to a request for the taking of his deposition. Indeed, the plaintiff told the court, during the hearing on his motion to vacate the preclusion order, that "these experts have been part of our files for a lengthy period of time. These experts were contacted back in 2003 and were ready to disclose, and the only reason that it didn't occur is because we wanted the deposition of [the defendant]."

The difficulty with this argument is that the plaintiff apparently never sought to enforce a linkage between the defendant's deposition and the plaintiff's disclosure. Judge Holzberg's scheduling order provided that depositions of fact witnesses should be completed by May 15, 2003, in advance of disclosure of the plaintiff's experts by June 15, 2003. It is true that, in his July 1, 2003 motion for extension of time to disclose and later in his May 26, 2004 objection to the defendant's motion to preclude expert testimony, the plaintiff complained that the defendant had not made himself available for deposition. Nevertheless, he never asked the trial court to make an order to compel the defendant to appear. See Practice Book § 13-26 et seq. We cannot fill this gap.

More than twenty years ago, in *In re Mongillo*, 190 Conn. 686, 461 A.2d 1387 (1983), rev'd in part on other grounds, *State* v. *Salmon*, 250 Conn. 147, 154–55, 735 A.2d 333 (1999), our Supreme Court articulated the principle that guides this appeal. The Supreme Court

observed: "Overcrowded dockets have become a major problem challenging the ability of the courts of this state and elsewhere to dispense justice. It is well known that justice delayed is justice denied. In order to fulfill our responsibility of dispensing justice we in the judiciary must adopt an effective system of caseflow management. Caseflow management is based upon the premise that it is the responsibility of the court to establish standards for the processing of cases and also, when necessary, to enforce compliance with such standards. Our judicial system cannot be controlled by the litigants and cases cannot be allowed to drift aimlessly through the system. To reduce delay while still maintaining high quality justice, it is essential that we have judicial involvement in managing cases." *In re Mongillo*, supra, 690–91.

We recognize that granting the motion was a harsh sanction because it was tantamount to dismissing the plaintiff's case. We conclude, nonetheless, that, on the facts before it, the trial court did not abuse its discretion in granting the defendant's motion to preclude.

The judgment is affirmed.

In this opinion the other judges concurred.