RANDY BERKOWITZ *v.* LINDSAY A. DEMAINE
(AC 25270)

Schaller, Flynn and Harper, Js.

Submitted on briefs April 1—officially released June 14, 2005

*Stephanie M. Pillar*, filed a brief for the appellant (defendant).

*David E. Koskoff*, filed a brief for the appellee (plaintiff).

*Opinion*

HARPER, J. The defendant, Lindsay A. Demaine, appeals from the judgment of the trial court rendered after the jury's verdict in favor of the plaintiff, Randy Berkowitz. On appeal, the defendant claims that the court improperly admitted into evidence the testimony of the plaintiff's expert witness. We affirm the judgment of the trial court.

The record reveals the following uncontested facts and procedural history relevant to the defendant's appeal. The plaintiff initiated this action on March 28, 2003, by filing a small claims complaint against the plaintiff, seeking damages for personal injuries resulting from an automobile accident in 2002. The plaintiff was operating his vehicle in a westerly direction on New Britain Avenue in Plainville, and the defendant was operating her vehicle directly behind the plaintiff's vehicle. The defendant's vehicle collided with the rear end of the plaintiff's vehicle when the plaintiff slowed his vehicle to turn right into the parking lot of J. Timothy's Restaurant. As a result of the collision, the plaintiff suffered a panic attack and other minor injuries, for which he sought treatment at New Britain General Hospital. The defendant successfully moved to transfer the matter to the regular docket to be tried to the jury as an uncontested liability matter.

On July 22, 2003, the plaintiff originally disclosed, in his disclosure of expert witnesses, pursuant to Practice Book § 13-4, that he planned to call as an expert witness C. Steven Wolf, chief emergency room physician of the New Britain General Hospital, "or in the event of his unavailability, [an]other emergency room doctor affiliated with the New Britain General Hospital." The plaintiff further disclosed that "[t]he doctor is expected to testify as to the nature and extent of the injuries suffered by the plaintiff, the causes thereof, the side-effects of these injuries, and pain incidental to them and incidental to their treatment, and the expenses of treatment. Specifically, the doctor is expected to testify consistently with the emergency room record previously furnished to the defendant, and further, to testify that the anxiety reaction, wrist injury, and neck sprain alleged by the plaintiff were causally related to the collision subject of this accident."

The plaintiff filed a supplement to his disclosure of experts on February 5, 2004, disclosing that Wolf was no longer affiliated with New Britain General Hospital and that Jeff Finkelstein had succeeded Wolf as the chief emergency room physician at the hospital. Additionally, the plaintiff disclosed that Finkelstein had agreed to testify about the same topics that were identified in the plaintiff's original disclosure.[1] Further, the plaintiff stated that he had advised the defendant's counsel by facsimile that he planned to present Finkelstein as a witness at trial and that Finkelstein could be available for deposition on fairly short notice if the defense desired to take his deposition.

The parties tried the case to the jury on February 10 and 11, 2004. On the first day of the trial, the defense raised the issue of precluding Finkelstein's testimony. The court heard oral argument on that issue and permitted Finkelstein to testify.

The jury found that the plaintiff was entitled to recover economic damages in the amount of $1006.69 and noneconomic damages in the amount of $4000. The court accepted the jury's verdict and recorded it on February 11, 2004. The defendant then filed a motion to set aside the verdict or for remittitur, alleging that the verdict was not consistent with the evidence pre-

---

[1] The plaintiff's supplement to his disclosure of expert witnesses provided specifically that on "February 2, [the] plaintiff's counsel met with Dr. [Finkelstein] who agreed to testify to precisely the same extent as disclosed by the original disclosure dated July 17, 2003. Insofar as opinion testimony be concerned, he will testify that the symptoms described by [the] plaintiff in his deposition are consistent with 'panic attack' and more likely than not were 'panic attack' causally related to the accident; that wrist injury is very common in victims of panic attack; that neck sprain is common in victims of rear-end collisions and that commonly the symptoms thereof do not manifest themselves for twelve to twenty-four hours after the trauma. All of these opinions are consistent with those disclosed in the original disclosure dated July 17, 2003. Dr. [Finkelstein's] opinions will be based on his education, training and experience and on his review of the hospital's chart, which was made available to the defense long ago."

sented to the jury, that the court's decision to allow the testimony of Finkelstein constituted harmful and reversible error and that the plaintiff's disclosure of Finkelstein as an expert witness failed to comply with Practice Book § 13-4 and prejudiced the defendant. The court denied the motion on March 8, 2004.

This appeal followed on March 19, 2004. The sole issue on appeal is whether the court improperly allowed Finkelstein to testify. We conclude that the court properly permitted his testimony.

We first set forth our standard of review. "A trial court's decision on whether to impose the sanction of excluding the testimony of a party's expert witness rests within the court's sound discretion. . . . The action of the trial court is not to be disturbed unless it has abused its broad discretion, and in determining whether there has been such abuse every reasonable presumption should be made in favor of its correctness. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Citations omitted; internal quotation marks omitted.) *Pool* v. *Bell*, 209 Conn. 536, 541, 551 A.2d 1254 (1989).

The defendant argued that the plaintiff's late disclosure that he planned to call Finkelstein as a witness violated Practice Book § 13-4 (4) and prejudiced her defense because she did not have adequate time to depose the witness. Additionally, the defendant argued that Finkelstein testified as to conditions that were not disclosed previously. We are not persuaded.

Practice Book § 13-4 (4) provides in relevant part: "[A]ny plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds

for each opinion, to all other parties within a reasonable time prior to trial. . . . If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subdivision, or if an expert witness who is expected to testify is retained or specially employed after a reasonable time prior to trial, such expert shall not testify if, upon motion to preclude such testimony, the judicial authority determines that the late disclosure (A) will cause undue prejudice to the moving party; or (B) will cause undue interference with the orderly progress of trial in the case; or (C) involved bad faith delay of disclosure by the disclosing party. . . . Any expert witness disclosed pursuant to this rule within six months of the trial date shall be made available for the taking of that expert's deposition within thirty days of the date of such disclosure. . . ."

After reviewing the record and the transcripts, we conclude that the court reasonably could have found that the defendant was not prejudiced by the plaintiff's late disclosure. The defendant did not file a written motion to preclude Finkelstein's testimony, nor did the defendant request a continuance.[2] In fact, the defendant did not raise any issue concerning Finkelstein's testimony until the trial had commenced. "A continuance is ordinarily the proper method for dealing with a late disclosure. . . . A continuance serves to minimize the possibly prejudicial effect of a late disclosure and

[2] The following colloquy took place between the defendant's attorney and the court during a hearing held March 8, 2004, regarding the defendant's motion for remittitur:

"[The Defendant's Counsel]: . . . [W]e did not have the opportunity to depose the doctor or to have our own expert comment on what this doctor would be testifying to.

"The Court: I don't recall you asking for a continuance. Did you ask for a continuance for that purpose?

"[The Defendant's Counsel]: Well, no, Your Honor . . . .

"The Court: . . . It would have been very difficult for me to deny a continuance if you asked for one."

absent such a request by the party claiming to have been thus prejudiced, appellate review of a late disclosure is not warranted." (Citations omitted; internal quotation marks omitted.) *Giardini* v. *Supermarkets General Corp.*, 24 Conn. App. 9, 12–13, 585 A.2d 110 (1991). If the defendant believed that she did not have adequate notice of Finkelstein's testimony and the subject matter to which he would testify, she could have requested a continuance, which would have allowed her ample time to depose the witness.

Additionally, the defendant did not file a written motion to preclude the testimony of Finkelstein. As the court stated: "[T]here's no question [that] if [the defendant] had filed a motion to preclude, this would be over. But . . . it's not just the words. You have to think about what are the purposes of these statutes . . . the purpose . . . is notice. I don't feel that [the plaintiff] gave [the defendant] enough notice but, on the other hand, [the defendant] didn't give [the plaintiff] enough notice either to tell him that you were going to be making a big deal about this the morning of trial. Maybe [the plaintiff] would have asked for a continuance."

The defendant further argues that Finkelstein testified as to conditions that were not disclosed previously. We find no merit in that argument. The court reasonably could have found that the substance of Finkelstein's testimony, as the plaintiff stated in his initial disclosure, concerned the "nature and extent of the injuries suffered by the plaintiff, the causes thereof, the side-effects of these injuries, and pain incidental to them and incidental to their treatment, and the expenses of treatment," and that his testimony was based on the emergency room record that previously was furnished to the defendant. An adequate description of the subject matter of the testimony was contained both in the plaintiff's initial disclosure and in the plaintiff's supplemental

disclosure of expert witnesses. The defendant alleged that Finkelstein's description of the plaintiff's condition as "carpal pedal spasm" during his testimony constituted disclosure of a new condition. We conclude that it was inconsequential that the witness used medical terms in his description of the plaintiff's injuries. The witness testified consistently with the plaintiff's expert witness disclosures.

We conclude that it was well within the court's discretion to allow the testimony of the witness. The court's decision to allow the testimony of Finkelstein did not reflect an abuse of its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.