# MARIA SZCZYCINSKA *v.* DANIELLE B. ACAMPORA ET AL.
## (AC 31195)

DiPentima, C. J., and Bear and Foti, Js.

Argued October 12—officially released December 14, 2010

*J. Xavier Pryor*, for the appellant-appellee (plaintiff).

*James A. Armentano*, with whom, on the brief, was *Christian A. Sterling*, for the appellee-appellant (named defendant).

*Opinion*

BEAR, J. The plaintiff, Maria Szczycinska, appeals from the judgment of the trial court rendered in accordance with the jury's verdict awarding her $3109.01 in economic damages and $2000 in noneconomic damages in this negligence action. The defendant Danielle B. Acampora cross appeals from the judgment rendered against her.[1] On appeal, the plaintiff claims that the court improperly permitted the defendant's medical expert to testify regarding the alleged impairment to the plaintiff's dorsal spine. On cross appeal, the defendant claims that the court improperly ordered the jury to reconsider its verdict awarding only economic damages to the plaintiff. We affirm the judgment of the trial court.

The following facts are relevant to our resolution of the issues on appeal. The plaintiff and the defendant were involved in a motor vehicle accident in which the plaintiff sustained injuries. As a result, the plaintiff brought this negligence action against the defendant.

---

[1] VW Credit Leasing, Ltd., also was a defendant in the trial court. Its motion for summary judgment, however, was granted by the trial court in February, 2008, without opposition. Accordingly, it is not a party to this appeal. We therefore refer in this opinion to Acampora as the defendant.

During trial, the defendant's medical expert, Anthony J. Spinella, an orthopedic surgeon, who had conducted a medical examination of the plaintiff at the request of the defendant, testified about, among other things, the plaintiff's dorsal spine and its alleged impairment.[2] The

[2] In her reply brief, the plaintiff raises an issue concerning the absence of the defendant's "request for independent medical examination" from the record. She argues that the "defendant's request for independent medical examination is not part of the record [on appeal] . . . [because the] defendant, in abrogation of the rules of practice, never filed the request with the [trial] court, in spite [of] making representations to [the] plaintiff, via certification, that she had complied with the Practice Book § 13-11 (b) requirements governing independent medical examinations, and filed it with the court." She argues, therefore, that "the court never had jurisdiction over the examination" and that Spinella's opinion is "fruit from the poisonous tree and inadmissible ab initio." She further explains that she is raising this issue for the first time on appeal because she did not become aware that the defendant had not filed the request with the trial court until the defendant filed a motion to supplement the appellate record, which we denied. The plaintiff asks that we not "consider any arguments that reference [the defendant's] request for independent medical examination due to the absence of that document [from] the record."

Although the plaintiff raises a question concerning the trial court's "jurisdiction" over the medical examination, she does not provide any meaningful analysis or citation to authority to support her contention that the defendant's alleged failure to certify to the trial court the request for an independent medical examination somehow affects the court's jurisdiction and the expert's ability to testify in accordance with his medical examination of the plaintiff and with the defendant's disclosure of expert witness. Accordingly, we decline to reach this issue due to inadequate briefing. See *Keeney* v. *Old Saybrook*, 237 Conn. 135, 142 n.7, 676 A.2d 795 (1996) (declining to address inadequately briefed claim that court deprived of jurisdiction).

We further note that, although the plaintiff objected to the defendant's request that she undergo a physical examination by Aris Yannopoulos, an orthopedic surgeon, which objection the court sustained, the record does not suggest that the plaintiff objected, as permitted by General Statutes § 52-178a and Practice Book § 13-11 (b), to the defendant's request that she undergo a medical examination by Spinella. See General Statutes § 52-178a, which provides: "In any action to recover damages for personal injuries, the court or judge may order the plaintiff to submit to a physical examination by one or more physicians or surgeons. No party may be compelled to undergo a physical examination by any physician to whom he objects in writing submitted to the court or judge." See also Practice Book § 13-11 (b), which provides: "In the case of an action to recover damages for personal injuries, any party adverse to the plaintiff may file and serve in accordance

plaintiff objected to Spinella's testimony on this subject, which objection the court overruled. Following the close of evidence, the jury returned a verdict in favor of the plaintiff and awarded her $3109.01 in economic damages and nothing in noneconomic damages. The court directed the jury to reconsider its verdict and damages award. After reconsideration, the jury returned a plaintiff's verdict of $3109.01 in economic damages and $2000 in noneconomic damages for a total award of $5109.01. The defendant thereafter filed a motion to reduce the verdict, which the court denied. The court then rendered judgment in accordance with the verdict. This appeal and cross appeal followed.

I

On appeal, the plaintiff claims that "the court erred in permitting the testimony of . . . Spinella with regard to testing allegedly performed on [the] [p]laintiff and with regard to the impairment rating to [the] [p]laintiff's dorsal spine." In support of this claim, the plaintiff argues that the testimony of Spinella violated Practice Book § 13-4 (b) (1) because the defendant's counsel did not disclose adequately the substance and grounds for Spinella's testimony, Spinella's medical report failed to disclose the diagnostic procedures that he used, the defendant acted in bad faith and the court abused its discretion by not imposing sanctions on the defendant,

---

with Sections 10-12 through 10-17 a request that the plaintiff submit to a physical or mental examination at the expense of the requesting party. That request shall specify the time, place, manner, conditions and scope of the examination and the person or persons by whom it is to be made. Any such request shall be complied with by the plaintiff unless, within ten days from the filing of the request, the plaintiff files in writing an objection thereto specifying to which portions of said request objection is made and the reasons for said objection. The objection shall be placed on the short calendar list upon the filing thereof. The judicial authority may make such order as is just in connection with the request. No plaintiff shall be compelled to undergo a physical examination by any physician to whom he or she objects in writing."

including the sanction of precluding Spinella's testimony because of the defendant's failure to disclose her expert in accordance with Practice Book § 13-4 (b) (1). We are not persuaded by the plaintiff's arguments.

Before reviewing the plaintiff's claim, we set forth the appropriate standard of review. "[T]he trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the ruling involves a clear misconception of the law, the trial court's decision will not be disturbed. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did. . . . Even if a court has acted improperly in connection with the introduction of evidence, reversal of a judgment is not necessarily mandated because there must not only be an evidentiary [impropriety], there also must be harm." (Internal quotation marks omitted.) *Dow-Westbrook, Inc.* v. *Candlewood Equine Practice, LLC*, 119 Conn. App. 703, 719–20, 989 A.2d 1075 (2010).

The plaintiff argues that the court should not have permitted Spinella to testify because the defendant's expert disclosure did not comply with our rules of practice. Initially, we note that the plaintiff argues that the defendant specifically did not follow Practice Book § 13-4 (b) (1) when disclosing her expert. The defendant filed her disclosure of expert testimony on October 22, 2008. At that time, Practice Book § 13-4 did not contain a subsection (b) (1).[3] On October 22, 2008, Practice

---

[3] Practice Book (2008) § 13-4 was amended effective January 1, 2009, at which time several subsections, including subsection (b) (1), were added. It then was amended again in June, 2009. The current version of Practice Book § 13-4 (b) provides in relevant part: "A party shall file with the court and serve upon counsel a disclosure of expert witnesses which identifies the name, address and employer of each person who may be called by that party to testify as an expert witness at trial, whether through live testimony or by deposition. In addition, the disclosure shall include the following information: (1) Except as provided in subdivision (2) of this subsection, the field of expertise and the subject matter on which the witness is expected

Book (2008) § 13-4 provided in relevant part: "(4) . . . [A]ny plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within a reasonable time prior to trial. . . ."

The following additional facts are relevant to the plaintiff's claim. On October 22, 2008, the defendant filed her disclosure of expert witness. The disclosure stated that Spinella was a board certified orthopedic surgeon who would testify "regarding his assessment of the past and present medical condition, diagnosis, treatment, prognosis, and permanency, if any, of the plaintiff . . . as it is causally related to the subject motor vehicle accident." The "substance of facts and opinions" set forth in the disclosure stated: "Spinella is expected to testify that the plaintiff exhibits no objective traumatic orthopaedic pathology . . . [and that] the plaintiff's November 28, 2005 cervical spine x-rays showed degenerative changes consistent with age and the dorsal/lumbar x-rays are normal for her age. . . . Spinella is expected to testify that the plaintiff has no permanent impairment to any part of her body as a result of the subject accident. . . . Spinella is expected to testify according to his October [14], 2008 report, which is attached and fully incorporated herein." The disclosure also stated that "Spinella's opinion is based on his background, education, training, and experience, his examination of the plaintiff, and his review of the plaintiff's medical records."

to offer expert testimony; the expert opinions to which the witness is expected to testify; and the substance of the grounds for each such expert opinion. Disclosure of the information required under this subsection may be made by making reference in the disclosure to, and contemporaneously producing to all parties, a written report of the expert witness containing such information. . . ."

Spinella's October 14, 2008 report, which was incorporated by reference into the disclosure, stated that the plaintiff was reporting mid-back pain, that she had no previous back problems and that she "does all her usual activities." It further stated that Spinella had conducted a written record review, which revealed cervical-lumbar strain and pain, normal motion in the neck with some pain at the extremes, normal neurological examination, pain over the dorsal kyphosis,[4] normal X rays of the cervical, dorsal and lumbar spines, and neck-dorsal spine pain with motion. One of the records that Spinella noted reviewing in his report was a September 7, 2006 report by Jeffrey Steckler, a physician, which gave the plaintiff a rating of 14 percent impairment to her cervical spine and 25 percent impairment to her dorsal spine. Spinella's report also set forth the results of his examination of the plaintiff, stating, among other things, that her cervical motion was normal and that she had full motion of her lumbosacral spine and tenderness in the upper lumbar spine, with no abnormal curvature of the spine. Spinella's report also stated that he had reviewed X ray films, which revealed a minimal C5-7 uncovertebral[5] degeneration that was consistent with the plaintiff's age and that her dorsal and lumbar spines were normal for her age, with some calcification on the left side at the cervical dorsal junction, with normal physiologic dorsal kyphosis. In his report, Spinella diagnosed the plaintiff with "[c]ervical and dorsal

---

[4] Stedman's Medical Dictionary defines "kyphosis" as "1. An anteriorly concave curvature of the vertebral column; the normal kyphoses of the thoracic and sacral regions are retained portions of the primary curvature (kyphosis) of the vertebral column. 2. A forward (flexion) curvature of the spine; the thoracic spine normally has a mild k[yphosis]; excessive forward curvature of the thoracic spine may indicate a pathologic condition." Stedman's Medical Dictionary (28th Ed. 2006) p. 1036.

[5] "Uncovertebral" is defined as: "Pertaining to or affecting the uncinate process of a vertebra." Stedman's Medical Dictionary (28th Ed. 2006) p. 2065. "Uncinate" is defined as: "Hooklike or hook-shaped." Id., p. 2064.

arthralgia [and] [o]steopenia."[6] He summarized his findings, opining that the plaintiff's initial complaints likely were due to a strain or sprain, that no objective traumatic orthopedic pathology was found, that there may be some age-related mild degeneration and that "[b]ased upon medical probability, there is no permanent impairment from the 2005 accident." Spinella also opined that the plaintiff's "dorsal spine kyphosis [was] normal physiologic kyphosis [but that there was] age related 'degeneration.' "

Practice Book (2008) § 13-4 (4) required the defendant to disclose the name of her expert, the subject matter on which he would testify, the substance of the facts and opinions to which he would testify and a summary of the grounds for each of his opinions. The plaintiff argues that the defendant's "disclosure does not state or otherwise indicate that . . . Spinella examined [the] plaintiff's dorsal spine, or that he would give an opinion regarding any permanency, or lack thereof, to [the] plaintiff's dorsal spine, as it related to the automobile accident of November 1, 2005." She argues that because of this failure, the court should have sanctioned the defendant by precluding Spinella's testimony or by limiting his testimony. We do not agree that the disclosure failed to comply with our rules of practice.

With regard to Spinella's testimony concerning the plaintiff's dorsal spine and whether there was a permanent impairment thereto, the defendant's disclosure stated that Spinella would testify that the plaintiff's dorsal-lumbar spine X rays were normal for a person her age and that she had no permanent impairment to any part of her body as a result of the motor vehicle

---

[6] "Arthralgia" is defined as: "Pain in a joint." Stedman's Medical Dictionary (28th Ed. 2006) p. 159.

"Osteopenia" is defined as: "Decreased calcification or density of bone; a descriptive term applicable to all skeletal systems in which such a condition is noted; carries no implication about causality." Id., p. 1391.

accident. Spinella's report, which was incorporated fully into the disclosure, further stated that his opinion was based on his examination of the plaintiff and his review of her medical records. That report further stated that he had conducted a written record review, which revealed, in relevant part, normal X rays of the cervical, dorsal and lumbar spines. The report also stated that Spinella's examination of the plaintiff revealed that her cervical motion was normal and that she had full motion of her lumbosacral spine and tenderness in the upper lumbar spine, with no abnormal curvature of the spine. Another portion of the report further stated that X ray films revealed a minimal cervical spine C5-7 uncovertebral degeneration that was consistent with the plaintiff's age, that her dorsal and lumbar spines were normal for her age, with some calcification on the left side at the cervical dorsal junction, with normal physiologic dorsal kyphosis. Spinella concluded that "[b]ased upon medical probability," the plaintiff had suffered "no permanent impairment" from the motor vehicle accident.

After reviewing the defendant's disclosure of expert witness and Spinella's trial testimony, we conclude that the disclosure was in compliance with Practice Book (2008) § 13-4 (4) and that the court, therefore, properly permitted Spinella's testimony as to the plaintiff's dorsal spine.

II

On cross appeal, the defendant claims that the court improperly ordered the jury to reconsider its verdict awarding only economic damages to the plaintiff. She argues that the court returned the jury for a second consideration of its verdict because the court adopted, "almost per se," a rule that a jury is precluded from awarding only economic damages. In her main brief, the defendant argues that our standard of review for

this claim is abuse of discretion; in her reply brief, she asks us to employ a plenary standard of review. The plaintiff argues that the court acted properly in asking the jury to reconsider its verdict. She further argues that we should decline to review the defendant's claim, however, because the defendant on appeal does not challenge the instructions given by the court when it returned the jury for a second consideration. We agree with the plaintiff that the claim is not reviewable.

Pursuant to General Statutes § 52-223, "[t]he court may, if it judges the jury has mistaken the evidence in the action and has brought in a verdict contrary to the evidence, or has brought in a verdict contrary to the direction of the court in a matter of law, return them to a second consideration, and for the same reason may return them to a third consideration. The jury shall not be returned for further consideration after a third consideration." See also Practice Book § 16-17. "This statute [formerly General Statutes § 1104] does not limit the power of the trial court to return the jury to a second or third consideration, to cases in which the verdict is, in the opinion of the court, in favor of or against a wrong party. A verdict in other respects correct may be contrary to the evidence, or to the direction of the court in a matter of law, because [it is] for too large or too small a sum, and the provisions of this section are applicable to such cases." *Black* v. *Griggs*, 74 Conn. 582, 584, 51 A. 523 (1902).

"While the remarks of the court to the jury in so returning [it], either regarding the evidence or regarding matters of law, are subject to review on appeal as a part of the charge . . . the power given by the statute to the court to so return the jury is largely a discretionary one, the reasonable exercise of which, in the absence of erroneous instructions to the jury in returning [it], will not be reviewed by this court, especially when it appears that the verdict finally accepted

is not, by reason of the change made, contrary to the law or the evidence." (Citations omitted.) Id., 584–85; see also *Ryan* v. *Scanlon*, 117 Conn. 428, 436, 168 A. 17 (1933).

The defendant in this case does not allege that the court's instructions to the jury, upon returning it to reconsider its verdict, were improper. Accordingly, we will not undertake a review of the court's exercise of its discretion in returning the jury for a second consideration as permitted by § 52-223.

The judgment is affirmed.

In this opinion the other judges concurred.