NANCY E. DOYLE, ADMINISTRATRIX (ESTATE OF JOHN A. DOYLE), ET AL. *v.* HAROLD J. KAMM ET AL. (AC 31566)

Beach, Robinson and Espinosa, Js.

Argued October 13, 2011—officially released January 17, 2012

*David M. Bernard*, with whom was *Joshua D. Koskoff*, for the appellants (plaintiffs).

*Kevin M. Tepas*, with whom, on the brief, was *Ilyssa H. Kelson*, for the appellees (defendants Harold J. Kamm and New Milford Medical Group, LLC).

*Opinion*

BEACH, J. The plaintiff, Nancy E. Doyle, individually and as administratrix of the estate of John A. Doyle,[1] appeals from the judgment of the trial court rendered on the jury's verdict in her wrongful death action after the court denied her motion to set aside the verdict in favor of the defendants, Harold J. Kamm and New Milford Medical Group, LLC.[2] On appeal, the plaintiff claims that the court erred by (1) excluding certain testimony of her expert pursuant to Practice Book (2008) § 13-4 (4) (now § 13-4 [b] [1]) and (2) prohibiting her from using a certain document to refresh the recollection of and to impeach the defendants' expert pursuant to Connecticut Code of Evidence § 9-1. We affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to the plaintiff's appeal. On or about May 7, 2004, Kamm, a physician specializing in internal medicine, began treating Doyle for issues related to weight loss. This treatment continued with visits on August 10, 2004, and November 1, 2004. In the early morning hours of March 25, 2005, Doyle experienced chest pain and went to the New Milford Hospital emergency room, where he was examined for several hours. After being released, but before he reached his home, Doyle suffered a heart attack and died.

On April 9, 2009, the plaintiff filed and served a second amended complaint on the defendants. The plaintiff

[1] We refer in this opinion to Nancy E. Doyle in both capacities as the plaintiff and to the decedent, John A. Doyle, as Doyle.

[2] The original complaint, which was filed on October 11, 2006, included claims against Richard J. Goccia, an emergency room physician, and New Milford Hospital, which were withdrawn on October 24, 2007, and April 7, 2009, respectively. The operative second amended complaint alleges four counts—two against Kamm and two against his employer, New Milford Medical Group, LLC. We therefore refer to Kamm and New Milford Medical Group, LLC, collectively as the defendants.

alleged that Kamm's treatment of Doyle did not conform to the applicable standard of care by failing: to adequately and properly care for, to treat, to monitor, to diagnose and to supervise Doyle; to order a stress test; to recheck Doyle's abnormal lipid profile; and to initiate proper pharmacological treatment for Doyle. The plaintiff claimed that, collectively, these actions resulted in the death of Doyle. The plaintiff further alleged that she, individually, was deprived of the companionship and society of her husband as a result of Kamm's negligence. She also alleged negligence and loss of companionship and society as to New Milford Medical Group, LLC.

Following ten days of trial and two days of deliberations, the jury returned its verdict in favor of the defendants on May 6, 2009. The plaintiff thereafter filed a motion to set aside the verdict based on several grounds, including the two issues before this court, namely, that the trial court erred by excluding certain testimony of the plaintiff's expert and by prohibiting the plaintiff's counsel from refreshing the recollection of and impeaching an expert witness for the defendants. The court denied the motion. This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff first argues that the court erred by precluding certain testimony of her expert, Jay B. Krasner, an internist, pursuant to Practice Book (2008) § 13-4 (4). We agree, but we conclude that the erroneous ruling does not warrant relief because we conclude that the error was harmless.

The following additional facts are relevant. On September 12, 2008, the plaintiff filed a disclosure regarding Krasner's expected testimony in which she stated that Krasner would testify as to issues relating to the standard of care, deviation from the standard of care and

causation. The plaintiff further asserted that Krasner would testify that Doyle had several cardiac risk factors, including elevated triglycerides, obesity and low high-density lipoprotein, and that Kamm did not properly address these issues.

On November 21, 2008, the plaintiff produced Krasner for a deposition. Krasner testified that the disclosure was an accurate recitation of the opinions he expected to articulate in the case and noted: "The only small change I would make is on the second page. We're talking about cardiac risk factors, including elevated triglycerides, obesity, and low [high-density lipoprotein], and basically what I would have said, had I redone this, was that he had metabolic syndrome, *which is what those things add up to*, and additionally, that his [low-density lipoprotein] cholesterol needed to be properly addressed." (Emphasis added.) The defendants' counsel thereafter questioned Krasner about the definition of metabolic syndrome, and Krasner testified as to how the treatment goals for someone with metabolic syndrome, which is a coronary heart disease equivalent, differ from goals as to someone without a coronary heart disease equivalent. Specifically, Krasner testified, inter alia, that "[i]n order to have metabolic syndrome you have to have three of these five criteria: elevated blood pressure, low [high-density lipoprotein], obesity, high triglycerides and elevated fasting glucose. Mr. Doyle meets all five of those criteria, by his labs and by his visit of May 7." Krasner also produced as an exhibit a 2005 article from the Journal of the American Heart Association that addressed the diagnosis and management of metabolic syndrome.

At trial, on April 21, 2009, the plaintiff's counsel asked Krasner on direct examination: "What is metabolic syndrome?" The defendants' counsel objected to any questioning concerning metabolic syndrome on the basis that it exceeded the scope of the disclosure of Krasner's

testimony. Outside the presence of the jury, the defendants' counsel stated that the disclosure did not reference metabolic syndrome and that he had no prior knowledge of it until he took the deposition of Krasner. The defendants' counsel also pointed out that the plaintiff never amended the disclosure, and, therefore, he had concluded that the plaintiff did not intend to ask Krasner about metabolic syndrome at trial. The plaintiff's counsel admitted that the disclosure did not explicitly state "metabolic syndrome" but argued that because the subject was "fully flushed out" at Krasner's deposition, there would be no prejudice from any subsequent questioning about it at trial. Further, the plaintiff's counsel asserted that the defendants' counsel should have asked that the deposition be continued if he felt prejudiced. The court sustained the objection of the defendants' counsel and allowed the jurors to return to the courtroom.

"[T]he trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the ruling involves a clear misconception of the law, the trial court's decision will not be disturbed. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did. . . . Even if a court has acted improperly in connection with the introduction of evidence, reversal of a judgment is not necessarily mandated because there must not only be an evidentiary [impropriety], there also must be harm." (Internal quotation marks omitted.) *Szczycinska* v. *Acampora*, 125 Conn. App. 474, 478, 10 A.3d 531 (2010).[3] "The court's decision on whether to impose

[3] Relying on our Supreme Court's decision in *Wexler* v. *DeMaio*, 280 Conn. 168, 181, 905 A.2d 1196 (2006), the plaintiff argues that the standard of review in the present case is plenary. Her reliance on *Wexler* for the standard of review, however, is misplaced. That case addressed whether a disclosure itself was sufficiently detailed to satisfy the requirements of Practice Book (2003) § 13-4 (4). Id., 182. In contrast, in the present case, the challenge is whether the disclosure encompasses certain expert testimony, and this

the sanction of excluding the expert's testimony . . . rests within the sound discretion of the court." (Internal quotation marks omitted.) *McVerry* v. *Charash*, 96 Conn. App. 589, 594, 901 A.2d 69, cert. denied, 280 Conn. 934, 909 A.2d 961 (2006).

A

The plaintiff argues that the court should have permitted Krasner to testify about metabolic syndrome and that the disclosure encompassed such testimony. We agree and conclude that the court abused its discretion by excluding Krasner's testimony on metabolic syndrome.

The plaintiff filed her disclosure on September 12, 2008. At that time,[4] Practice Book (2008) § 13-4 (4) required a party, inter alia, to "disclose the name of [the] expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion . . . ." Our Supreme Court has observed that our case law requires a disclosure to include "the basic details of the plaintiff's claim." *Wexler* v. *DeMaio*, 280 Conn. 168, 187, 905 A.2d 1196 (2006). The purpose of the provision is "to assist the defendant in the preparation of his case and to eliminate unfair surprise by furnishing the defendant

determination necessarily depends on the individual facts of the case. Cf. *Klein* v. *Norwalk Hospital*, 299 Conn. 241, 250 n.9, 9 A.3d 364 (2010) (applying plenary standard of review because court's exclusion of expert testimony not based on individual facts of case but rather was legal conclusion).

[4] In 2008, Practice Book § 13-4 did not include subsection (b) (1). Since 2008, § 13-4 has been amended. These amendments, however, do not apply to cases filed prior to January 1, 2009. See Practice Book § 13-4 (i). The current version of the rules of practice requires in the disclosure "the field of expertise and the subject matter on which the witness is expected to offer expert testimony; the expert opinions to which the witness is expected to testify; and the substance of the grounds for each such expert opinion. . . ." Practice Book § 13-4 (b) (1).

with the essential elements of a plaintiff's claim." Id., 188.

The court concluded that the subject matter, namely, metabolic syndrome, was not contained in the relevant disclosure, and, therefore, it excluded the testimony so as to eliminate unfair surprise. We conclude that this ruling was erroneous. The language of the disclosure of Krasner provided: "Dr. Krasner will further testify that Mr. Doyle had cardiac risk factors including elevated triglycerides, obesity and low [high-density lipoprotein], and that Dr. Kamm did not properly address these issues." The plaintiff argues that this provided adequate notice to the defendants that she planned to present testimony at trial about metabolic syndrome. We agree.

Practice Book (2008) § 13-4 required, inter alia, disclosure of the subject matter and the substance of the facts and opinions as to which the expert would testify. The dispositive determination, then, is whether metabolic syndrome constitutes a new and distinct subject matter or whether it is reasonably contemplated by the disclosure. Outside the presence of the jury, on request from the court, Krasner testified that metabolic syndrome "is considered a coronary risk equivalent" and is a diagnosis given when a patient has three of the following five criteria: "blood pressure, [high-density lipoprotein] cholesterol, triglycerides, measure of obesity and the measure of glucose tolerance." The disclosure stated that he would testify about cardiac risk factors, including elevated triglycerides, obesity and low high-density lipoprotein, and that Kamm did not properly address these issues. Metabolic syndrome, as described by Krasner, is shorthand for a constellation of risk factors, including those listed in the disclosure, and it is the presence of these risk factors that affects the treatment goals of a patient. See *Berkowitz* v. *Demaine*, 89 Conn. App. 589, 595–96, 874 A.2d 326

(2005) (holding there was adequate description of subject matter in disclosure when disclosure stated " 'nature and extent of the injuries' " and expert witness described plaintiff's condition as " 'carpal pedal spasm' " and noting that it was "inconsequential that the witness used medical terms"). A disclosure is not required to include every subordinate detail of an expert's testimony; rather only the "essential elements"; *Wexler* v. *DeMaio*, supra, 280 Conn. 188; and "basic details" of the claim are necessary. Id., 187. Accordingly, we conclude that testimony about metabolic syndrome, as described, was sufficiently contemplated by the terms of the disclosure.

Further, we cannot conclude that it was reasonable for the court to conclude that exclusion of the testimony was necessary in order to avoid unfair surprise to the defendants. Although the disclosure did not include the term "metabolic syndrome," it did include the general term "cardiac risk factors" and explicitly named three of the factors that can constitute metabolic syndrome.[5] Also, counsel for the defendants questioned Krasner about metabolic syndrome at his deposition. There, Krasner testified as to multiple issues related to metabolic syndrome including: its definition; each cardiac risk factor and how each related to Doyle; that in Krasner's opinion, Doyle had metabolic syndrome; that a diagnosis of metabolic syndrome changes the treatment goals of a patient because it is a coronary heart disease equivalent; when metabolic syndrome was first introduced in the medical community; and whether the guidelines had changed. Further, three days after the deposition of Krasner, counsel for the defendants sent a letter to one of his experts, Philip Podrid, a cardiologist, in which counsel informed Podrid that "[i]t appears

---

[5] Whether "metabolic syndrome" is a distinct disease or a description of symptoms is of little moment. In part I B of this opinion, we note that Krasner testified that Doyle's symptoms amounted to a coronary risk equivalent to a prior heart attack and that this altered the standard of care.

to be Dr. Krasner's view that Mr. Doyle had 'metabolic syndrome' in May 2004 and since this constitutes a [coronary heart disease] equivalent, it changed the requirement for management of the patient." Additionally, at Podrid's deposition, less than one month before trial, the plaintiff's counsel asked Podrid: "What is metabolic syndrome?" The plaintiff's counsel further asked Podrid to elaborate on the metabolic abnormalities that it encompasses and inquired whether Doyle had metabolic syndrome. If the defendants believed that they did not have adequate notice of the subject matter about which Krasner would testify, they could have requested the opportunity to depose Krasner a second time, limited to the issue of metabolic syndrome. Based on the disclosure of Krasner, the deposition of Krasner, the letter from the defendants' counsel and Podrid's deposition, we conclude that the court erred in precluding testimony about metabolic syndrome so as to eliminate unfair surprise.

## B

Not every evidentiary error, however, requires reversal. The error must be harmful. The plaintiff argues that the court's ruling precluding Krasner from testifying as to metabolic syndrome was harmful because it prevented him from explaining the basis for his opinions, which preclusion damaged his credibility. We disagree.

"The harmless error standard in a civil case is whether the improper ruling would likely affect the result. . . . Generally, a trial court's ruling will result in a new trial only if the ruling was both wrong and harmful." (Citation omitted; internal quotation marks omitted.) *Wiseman* v. *Armstrong*, 295 Conn. 94, 106, 989 A.2d 1027 (2010). "Moreover, an evidentiary impropriety in a civil case is harmless only if we have a fair assurance that it did not affect the jury's verdict."

(Internal quotation marks omitted.) *Sullivan* v. *Metro-North Commuter Railroad Co.*, 292 Conn. 150, 161, 971 A.2d 676 (2009). "[B]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful." (Internal quotation marks omitted.) *Klein* v. *Norwalk Hospital*, 299 Conn. 241, 254, 9 A.3d 364 (2010). "In those instances wherein a party claims that the trial court improperly excluded testimony, we undertake a review of the relationship of the excluded evidence to the central issues in the case and whether that evidence would have been merely cumulative of admitted testimony." Id., 255.

After the court prohibited Krasner from answering the question by the plaintiff's counsel regarding the definition of metabolic syndrome, the plaintiff's counsel posed a hypothetical question based on Doyle's medical records. The plaintiff's counsel elicited from Krasner that the standard of care under these circumstances was that the patient had a coronary risk equivalent and that Kamm needed either to order a stress test or to refer Doyle to a cardiologist to conduct such a test. Krasner further testified that Kamm had more than enough information, based on the presence of multiple cardiac risk factors, including high-density lipoprotein, low-density lipoprotein, triglycerides, weight and blood pressure, to conclude that Doyle was at risk of having coronary artery disease. Krasner, therefore, was able to testify, and did, in fact, testify as to the various risk factors that can constitute metabolic syndrome and that these factors indicated that Doyle had a coronary risk equivalent. That Krasner stated in his testimony that there was "the thing, which I guess, I'm not allowed to mention" does not change the fact that he testified that Doyle had a coronary risk equivalent and that this altered the standard of care. The factors to which Krasner testified were relevant to the central issue of

the applicable standard of care, and the trier of fact was not prohibited from hearing that testimony.

We note also that in concluding that the error was harmless, we have carefully considered the plaintiff's argument that the credibility of Krasner was damaged. Although establishing an expert's credibility is undoubtedly important, we conclude that the court did not improperly damage Krasner's credibility by its rulings. The court sustained the defendants' objection to a question asking for the definition of metabolic syndrome. Krasner was still able to testify, and did testify, as to the cardiac risk factors that Doyle exhibited and as to Krasner's determination that Doyle had a coronary risk equivalent. The plaintiff suggests that the statements by Krasner that there was something to which he was not allowed to testify damaged his credibility.[6] These statements by Krasner were not required by the court's ruling; rather Krasner volunteered reference to a prohibited area. We therefore conclude that the plaintiff has not shown that the error was harmful and likely affected the verdict. While the excluded testimony was related to a central issue in the case, namely, the applicable standard of care, Krasner nonetheless was allowed to testify about cardiac risk factors and that Doyle had a coronary risk equivalent.[7]

[6] When asked to identify the evidence that supported his conclusion that Doyle was at risk of having coronary artery disease, Krasner identified Doyle's abnormal electrocardiogram, abnormal lipid parameters and "the thing, which I guess, I'm not allowed to mention." On cross-examination, when asked whether the standard of care would require Kamm to order a stress test based solely on the risk factors present, Krasner responded that answering would require him to "ge[t] into an area which I was already instructed I'm not allowed to comment on."

[7] The plaintiff also argues that the court erroneously prohibited the plaintiff's counsel from making an offer of proof as to the issue of metabolic syndrome. In denying an offer of proof by the plaintiff's counsel, the court noted that the offer of proof was not timely. The objection regarding metabolic syndrome occurred during the morning session, and the plaintiff's counsel attempted to make the offer of proof at the beginning of the afternoon session. "An offer of proof, properly presented, serves three purposes. First, it should inform the court of the legal theory under which the offered

## II

The plaintiff next argues that the court erred by prohibiting her counsel from using a certain document to refresh the recollection of and, ultimately, to impeach an expert witness for the defendants. Specifically, the plaintiff claims that the court erroneously ruled that a document used to refresh a witness' recollection must be authenticated. We agree. We do not agree with the plaintiff that the erroneous ruling warrants relief, however, because there is no adequate record on which to determine whether the error was harmful.

The following additional facts are relevant. The court's ruling applied to two lines of questioning. On cross-examination, the plaintiff's counsel asked the defendants' expert witness, Podrid, whether a prior myocardial infarction[8] could cause flattened T waves.[9] Podrid responded: "Generally, it causes inverted T waves." The plaintiff's counsel repeated his question, and Podrid repeated his answer. When the plaintiff's counsel asked Podrid a third time, Podrid testified: "I don't know that you make a diagnosis of a prior [myocardial infarction] with just flattened T waves." The plaintiff's counsel then asked whether Podrid recalled

evidence is admissible. Second, it should inform the trial judge of the specific nature of the offered evidence so the court can judge its admissibility. Third, it thereby creates a record adequate for appellate review." (Internal quotation marks omitted.) *State* v. *Zoravali*, 34 Conn. App. 428, 433, 641 A.2d 796, cert. denied, 230 Conn. 906, 644 A.2d 921 (1994). It follows from these purposes that to be proper, an offer of proof should be presented at or around the time of the offered evidence so that the court may make an informed ruling regarding its admissibility. Under the circumstances, for reasons stated previously, we conclude that the error, if any, was harmless.

[8] Myocardial infarction is a synonym for heart attack and is defined as an "[infarction] of a segment of the heart muscle, usually as a result of occlusion of a coronary artery." Stedman's Medical Dictionary (27th Ed. 2000) p. 895. Infarction is defined as a "[s]udden insufficiency of arterial or venous blood supply . . . ." Id., p. 894.

[9] A "T" wave is a type of deflection in an electrocardiogram. Stedman's Medical Dictionary (27th Ed. 2000) p. 1984.

testifying in a case called *Plourde*,[10] to which Podrid answered that he did not. The plaintiff's counsel then attempted to provide Podrid with a purported copy of his deposition testimony from *Plourde* and directed his attention to a specific part of the testimony purportedly relevant to whether a myocardial infarction could cause flattened T waves. The defendants' counsel objected on the ground that it was not clear that the document was a certified copy of the deposition transcript. After the jury was excused from the courtroom, the plaintiff's counsel responded that he intended to use the deposition testimony to impeach Podrid on the basis of a prior inconsistent statement and that there need not be any authentication. The court sustained the objection.

On direct examination, Podrid had testified that Doyle's May 7, 2004 electrocardiogram (EKG) was within normal limits and that the T waves were "sort of flattened . . . ." He further testified that the EKG did not demonstrate that Doyle had suffered an old inferior wall myocardial infarction. On cross-examination, the plaintiff's counsel attempted to elicit an admission from Podrid that ST segments are more important than T waves in detecting cardiac ischemia.[11] Upon being asked whether this was true, Podrid responded that he was not aware of any data supporting that, and upon further questioning, he stated that he could not recall saying anything inconsistent with his testimony. The plaintiff's counsel then attempted to provide Podrid with what counsel purported to be the deposition transcript from *Plourde*. He directed Podrid to a specific section of the testimony in regard to the question as to whether he had ever stated that flattened ST segments were more indicative of ischemia than flattened T

---

[10] *Plourde* v. *Hartford Hospital*, Superior Court, judicial district of Hartford, Docket No. CV-02-0814180-S.

[11] Ischemia is defined as inadequate circulation of blood. Stedman's Medical Dictionary (27th Ed. 2000) p. 924.

waves. Counsel for the defendants objected "for the same reason that I raised before," and the court sustained the objection.

"While evidentiary determinations are usually reviewed for abuse of discretion . . . the type of decision made by the trial court does not, in isolation, determine the appropriate standard for appellate review. To the contrary, [r]ather than invoke a rule based strictly on a category, we conclude that the better approach is . . . [to] examine the nature of the ruling at issue in the context of the issues in the case." (Citation omitted; internal quotation marks omitted.) *Klein* v. *Norwalk Hospital*, supra, 299 Conn. 250 n.9. "[P]lenary review is appropriate . . . only when an evidentiary ruling involves a clear misconception of the law." (Internal quotation marks omitted.) *State* v. *Saucier*, 283 Conn. 207, 215 n.7, 926 A.2d 633 (2007). "To the extent a trial court's admission of evidence is based on an interpretation of the Code of Evidence, our standard of review is plenary." Id., 218.

### A

The plaintiff argues in her brief that the court's ruling prohibiting her counsel from using the deposition transcript from *Plourde* to impeach Podrid and to refresh his memory was based on an erroneous conclusion that the document must be authenticated pursuant to Connecticut Code of Evidence § 9-1. Our review of the record reveals that the substance of the argument at trial was whether the deposition transcript was required to be certified before the plaintiff's counsel could give it to Podrid during his testimony to read a specific section to himself. In her brief, the plaintiff frames the issue as one of refreshing recollection but often conflates refreshing the recollection of the witness with impeaching the witness. To the extent that the issue is one of refreshing recollection, the court clearly erred because the law is well established that authentication is not required to refresh a witness' recollection. Our

code of evidence allows any object or writing to be used to refresh a witness' recollection, regardless of its admissibility, and authentication is a condition precedent only for admissibility. Conn. Code Evid. § 6-9 (allowing *any* object or writing to refresh witness' recollection); Conn. Code Evid. § 6-9 (a), commentary ("[a]ny party may introduce into evidence the object or writing used to stimulate the witness' recollection if the object or writing is otherwise admissible under other provisions of the Code"); Conn. Code Evid. § 9-1 (authentication is condition precedent to admissibility). Because the item that the plaintiff's counsel attempted to use to refresh recollection was not immediately being introduced into evidence, authentication was not required at that time. Insofar as the questioning was part of laying a foundation to impeach the witness by asking whether he had made the statement, authentication was not required unless the plaintiff's counsel later sought to introduce the document as a full exhibit.[12] Conn. Code Evid. § 9-1 (requiring authentication as a condition precedent to *admissibility*). In the present case, the document was marked as an exhibit for identification only, and the plaintiff's counsel made no attempt to introduce it as a full exhibit. Accordingly, the court erred by ruling that the deposition transcript had to be certified before the plaintiff's counsel could show it to Podrid during his testimony.[13]

---

[12] This does not mean, of course, that counsel is entitled to read aloud from anything other than a full exhibit in the presence of the jury.

[13] Ordinarily, a witness may be asked if he or she made a prior statement, without a showing of authentication, so long as there is a good faith basis for the question. See *State* v. *Grant*, 89 Conn. App. 635, 640, 874 A.2d 330 ("[a] good faith basis on the part of examining counsel as to the truth of the matter contained in questions propounded to a witness on cross-examination is required" [internal quotation marks omitted]), cert. denied, 275 Conn. 903, 882 A.2d 678 (2005). If the witness denies making the statement, further evidentiary hurdles must be met before the inconsistent statement may be entered as a full exhibit. See *State* v. *Valentine*, 240 Conn. 395, 403, 692 A.2d 727 (1997) ("[a]s a general rule, extrinsic evidence of a prior inconsistent statement may not be admitted to impeach the testimony of a witness on a collateral matter"); *State* v. *Butler*, 207 Conn. 619, 626,

## B

The plaintiff further argues that the error was harmful because it deprived her of the ability to impeach the credibility of the defendants' expert about a material issue in the case, namely, the interpretation of EKGs. We cannot agree because there is not an adequate record on which to make this determination.

There was no offer of proof made by the plaintiff's counsel to show a substantial inconsistency between Podrid's statements at trial and his purported statements at the deposition in *Plourde*. See *United States* v. *Hale*, 422 U.S. 171, 176, 95 S. Ct. 2133, 45 L. Ed. 2d 99 (1975) (impeachment of witness by prior inconsistent statement is proper only if two statements at issue are in fact inconsistent); *State* v. *Richardson*, 214 Conn. 752, 763, 574 A.2d 182 (1990) (inconsistency must be substantial and relate to material matter). We do not know how, if at all, Podrid's testimony would have been impeached had the defendants' objection not been sustained. There is no way to tell from the record whether Podrid would have admitted or denied making the statements, or whether his recollection would have been refreshed about whether he made the statements. There additionally is no way to tell whether the context of the statements would have had a bearing on the degree of any inconsistency. "The absence of an offer of proof may create a gap in the record that would invite inappropriate speculation on appeal about the possible substance of the excluded testimony." (Internal quotation marks omitted.) *Dinan* v. *Marchand*, 279 Conn. 558, 583, 903 A.2d 201 (2006); see also *In re Alison M.*, 127 Conn. App. 197, 224, 15 A.3d 194 (2011).

---

543 A.2d 270 (1988) ("[w]here the witness denies having made the statement or is unable to recall having done so, extrinsic evidence may be admitted to show it was made").

Accordingly, the plaintiff has failed to provide an adequate record for this court's review, and we therefore cannot conclude that the error was harmful. See *Vasquez* v. *Rocco*, 267 Conn. 59, 64, 836 A.2d 1158 (2003) (affirming judgment of trial court because, inter alia, "record on appeal is inadequate for our determination of the extent to which the plaintiff may have been harmed by the court's improper ruling"); *Barra* v. *Ridgefield Card & Gift Gallery, Ltd.*, 194 Conn. 400, 407, 480 A.2d 552 (1984) ("[i]t is the appellant's burden to ensure that we are provided with an adequate appellate record to support his claims of error").

The judgment is affirmed.

In this opinion the other judges concurred.